FAIR LAWN EDUCATION ASSOCIATION, PLAINTIFF-RESPONDENT, v. FAIR LAWN BOARD OF EDUCATION, DEFENDANT AND THIRD-PARTY PLAINTIFF-RESPONDENT, v. TEACHERS' PENSION AND ANNUITY FUND, DIVISION OF PENSIONS, DEPARTMENT OF TREASURY, STATE OF NEW JERSEY, THIRD-PARTY DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 17, 1978—Decided July 13, 1978.

68

Before Judges MICHELS, PRESSLER and BILDER.

*Mr. Stacy L. Moore, Jr.,* Deputy Attorney General, argued the cause for appellant Board of Trustees of the Teachers' Pension and Annuity Fund (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. William F. Hyland,* former Attorney General, and *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

*Mr. William Greenberg* argued the cause for respondent Fair Lawn Education Association (*Messrs. Greenberg & Mellk,* attorneys).

*Mr. Reginald F. Hopkinson* argued the cause for respondent Fair Lawn Board of Education (*Messrs. Jeffer, Walter, Tierney, De Korte, Hopkinson & Vogel,* attorneys).

The opinion of the court was delivered by

MICHELS, J. A. D. This is an appeal from a final judgment of the Chancery Division which, in part, declared that the early retirement remuneration plan (plan) included in the collective bargaining agreement entered into by plaintiff Fair Lawn Education Association (the Association) and defendant and third-party plaintiff Fair Lawn Board of Education (the board) to be enforceable and directed the

board to make payment to retiring teachers in accordance with the provisions of the plan.[1] At issue here is the

---

[1] ARTICLE VI
### EARLY RETIREMENT REMUNERATION PLAN

The Board and the Association agree that the following **Early Retirement Remuneration Plan** shall be offered to the professional staff:

A.    As of August 31, 1977, any teacher who will have reached the age of 55 or over* and has been continuously employed by the Fair Lawn Board of Education for at least fifteen (15) years prior to that date and who notifies the Board in writing prior to *April 1, 1977* of his or her intention to retire prior to September 1, 1977, shall upon retirement receive an additional remuneration in the amount of $6,000.

*Except those teachers who will attain the mandatory retirement age by that date.

B.    As of August 31, 1978, any teacher who will have reached the age of 55 or over and has been continuously employed by the Fair Lawn Board of Education for at least fifteen (15) years prior to that date and who notifies the Board in writing prior to *April 1, 1978* of his or her intention to retire prior to September 1, 1978, shall upon retirement receive an additional remuneration according to the following schedule:

*Age of Teacher as of August 31, 1978*

|  | Total |
|---|---|
| 55 years but not more than 56 | $ 6,000. |
| 56 years but not more than 57 | 6,000. |
| 57 years but not more than 58 | 6,000. |
| 58 years but not more than 59 | 5,000. |
| 59 years but not more than 60 | 5,000. |
| 60 years but not more than 61 | 5,000. |
| 61 years but not more than 62 | 2,000. |
| 62 years but not more than 63 | 2,000. |
| 63 years but not more than 64 | 2,000. |
| 64 years but not more than 65 | 500. |
| 65 years or over | –0– |

C. *Payment shall be made according to the option selected by the retiree. The options available are:*
  1. Lump sum payment — September of the year of retirement.
  2. Lump sum payment — January of the year following retirement.
  3. Ten equal monthly installments beginning in September of the year of retirement.

authority of the board to pay to its early retiring teachers retirement benefits in addition to the normal retirement benefits provided by the Teachers' Pension and Annuity Fund Law (Teachers' Pension Law), *N. J. S. A.* 18A:66–1 *et seq.*

The essential facts are not in dispute. The Association is the exclusive representative for collective negotiations of the teachers employed by the board. On July 1, 1976 the Association and the board entered into a two-year collective bargaining agreement which, among other things, provided the terms and conditions of employment for teachers in the Fair Lawn School District for the 1976–1977 and 1977–1978 school years. Included in the agreement was a supplemental retirement benefit plan which provided for the payment of $6,000 to any teacher who (1) was 55 years or more as of August 31, 1977 (but who had not yet reached the mandatory retirement age of 70); (2) had at least 15 years of service with the board and, (3) notified the board in writing before April 1, 1977 of his intention to retire prior to September 1, 1977. This payment was in addition to the benefits provided under the Teachers' Pension Law. For the following year there is a graduated payment schedule based on age, which, in effect, penalizes a teacher who delays retirement by decreasing the amount of the retirement benefit. It is apparent that the plan was designed to induce the early retirement of older, more highly compensated teachers, to make way for younger teachers, who would be paid less commensurate with their education, experience and length of service. The rationale for the payment of such supplemental retirement benefits is that the older teachers would be rewarded for lengthy service and the board would effect a saving by a reduction in salaries.

---

4. Five equal monthly installments beginning in January of the year following retirement.

In the event of the death of the retiree, prior to collecting the full benefit, his or her estate shall be paid the remainder.

After the collective bargaining agreement was signed, and prior to April 1, 1977, 12 teachers informed the board in writing that they intended to retire on or before September 1, 1977 and sought to recover retirement benefits for their early retirement as provided by the plan. The board, however, after consideration, refused to make payments to the retiring teachers unless each agreed to indemnify the board and to repay any benefits received if the plan and the payments were subsequently determined to be invalid. The board also agreed to permit the teachers to resind their resignations and return for the 1977–1978 school year. The board's refusal to pay the teachers the supplemental retirement benefits pursuant to the plan was occasioned, in part, by the New Jersey Attorney General's opinion to the Director of Pensions that a local board of education may not establish a supplemental retirement benefits program for retired members of the Teachers' Pension and Annuity Fund. Apparently, another local board of education negotiated a supplemental retirement benefits program in a collective bargaining agreement with its teachers' representative which provided that any teacher, who attained the age of 55 years with 25 years of service and retired within a prescribed period of time would receive an additional retirement benefit of two times his last full year's salary. The Attorney General ruled that "a local board of education may not modify the retirement rights, benefits and privileges as uniformly established for the membership of the Teachers' Pension and Annuity Fund by *N. J. S. A.* 18A:66–1, *et seq.,* through the implementation of 'local supplemental retirement programs.'" The Attorney General advised the Director of Pensions to notify all local boards that they may not implement supplemental retirement benefit programs; that any retirements granted pursuant to such a program should be vacated, and that any retirement allowance erroneously paid during the retirement period be repaid to the Fund.

As a result of the board's action, the Association instituted this action seeking a declaration that the retiring teachers

were entitled to immediate payment in accordance with the plan and an order directing the board to make such payments to the said teachers. The board counterclaimed, seeking a declaration that the plan is valid and enforceable and joined the Teachers' Pension and Annuity Fund, Division of Pensions, Department of Treasury, State of New Jersey (Fund), as a third-party defendant.

At the conclusion of a plenary hearing the trial judge held that (1) the payment of supplemental retirement benefits was a term and condition of employment subject to negotiation between the board and the Association pursuant to the New Jersey Employer-Employee Relations Act, *N. J. S. A.* 34:13A-1 *et seq.;* (2) the plan was valid and enforceable, and (3) the board was directed to make retirement benefit payments to the retired teachers in accordance with the plan's terms. The Fund appeals, contending, essentially, that the board lacked the statutory authority to pay retirement benefits to its former employees; that the Teachers' Pension Law is the exclusive source of retirement benefit for teachers retiring in New Jersey, and therefore the plan is *ultra vires,* void and unenforceable. We agree and reverse the judgment of the Chancery Division.

It is, of course, fundamental that local boards of education, as creations of the State, are capable of exercising only those powers which are granted expressly or by necessary or fair implication by the Legislature. See *Wagner v. Newark,* 24 *N. J.* 467, 474–475 (1957); *Belvidere Bd. of Ed. v. Bosco,* 138 *N. J. Super.* 368, 376 (Law Div. 1975); *Resnick v. East Brunswick Tp. Bd. of Ed.,* 135 *N. J. Super.* 257, 260 (Ch. Div. 1975), aff'd 144 *N. J. Super.* 474 (App. Div. 1976); *Botkin v. Westwood,* 52 *N. J. Super.* 416, 427 (App. Div. 1958), app. dism. 28 *N. J.* 218 (1958). The Legislature has expressly vested local boards of education with traditional management prerogatives, including the power to adopt rules governing the terms and tenure of employment, salaries, the time and mode of payment thereof,

and to negotiate with representatives of the teachers on matters affecting the terms and conditions of employment.

However, the Legislature has not vested in such boards the power to establish supplemental retirement benefits plans or programs for its teachers. Neither the Education Law nor the Employer-Employee Relations Act expressly or by necessary or fair implications confers such power on them. To the contrary, the Legislature has preempted the field. The Teachers' Pension Law (*N. J. S. A.* 18A:66–1 *et seq.*) provides a comprehensive uniform state-wide plan for the payment of retirement benefits to teachers in New Jersey.[2] The law is meticulous in detail and establishes the criteria for teacher's entitlement to retirement benefits and the method of calculating those benefits. Thus, we are persuaded that the Legislature intended to preclude the exercise of any power by local boards of education with respect to teachers' retirement benefits, and that the board lacked the statutory authority or power to establish the plan under review. See *Overlook Terr. Mgmt. v. West New York Rent Control Bd.,* 71 *N. J.* 451, 461–463 (1976); *Brunetti v. New Milford,* 68 *N. J.* 576, 601 (1975); *Summer v. Teaneck,* 53 *N. J.* 548, 554–555 (1969).

Further support for our view is found in the New Jersey Employer-Employee Relations Act, *N. J. S. A.* 34:13A–1 *et seq.* There, while the act provides that the majority repre-

---

[2]The comprehensiveness of the Teachers' Pension and Annuity Fund Law is evidenced by the broad scope of retirement benefits provided, including benefits for ordinary disability retirement (*N. J. S. A.* 18A:66–39 and 41); accidental disability retirement (*N. J. S. A.* 18A:66–39 and 42); early retirement (*N. J. S. A.* 18A:66–37); service retirement (*N. J. S. A.* 18A:66–43 and 44); deferred retirement (*N. J. S. A.* 18A:66–36); and veterans' retirement (*N. J. S. A.* 18A:66–70 and 71). In addition, the law provides related benefits such as contributory and non-contributory life insurance coverage (*N. J. S. A.* 18A:66–38 and 53); accidental death benefits (*N. J. S. A.* 18A:66–46); and, loans from contributions (*N. J. S. A.* 18A:66–35).

sentatives of the public employer and the public employee shall negotiate with respect to terms and conditions of employment, and when an agreement is reached that the terms and conditions of employment shall be embodied in a signed writing (*N. J. S. A.* 34:13A–5.3), it expressly states that no provision of the act shall "annul or modify any pension statute or statutes of this State." *N. J. S. A.* 34:13A–8.1. By enacting this section, our Legislature obviously intended to give the Teachers' Pension Law paramount continuing effect. *Cf. Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n,* 64 *N. J.* 17, 24–25 (1973).

Additionally, we are satisfied that the payment of supplemental retirement benefits as an inducement to early retirement will impair the actuarial integrity of the Teachers' Pension Fund and will impose an unfair and improper burden on its other members. Premature retirement, whether induced by the payment of supplemental benefits, as contemplated by the Fair Lawn plan, or by lowering the compulsory retirement age, contributes to an unanticipated additional cost liability to the system. Such a trauma can only be remedied by substantial additional contributions to the fund by the other members. See *Jacobs v. N. J. Highway Auth.,* 54 *N. J.* 393, 400, 404 (1969). The consulting actuary for the Teachers' Pension Fund has shown that if a sufficient number of school districts adopt similar supplemental benefit plans to induce early retirement, and if the average age of service retirement for the teachers covered by the Teachers' Pension Fund is reduced by even one year, the State's contribution would have to be increased by an additional $11,865,000 if begun on July 1, 1976. In our view the Fair Lawn plan is contrary to the Teachers' Pension Law and if permitted to stand will subvert the beneficial aim of the Legislature with respect to pensions. *See Jacobs, supra* at 404.

Accordingly, we hold that the early retirement remuneration plan included in the collective bargaining agreement be-

tween the Fair Lawn Education Association and the Fair Lawn Board of Education is *ultra vires,* void and unenforceable. We reverse the judgment of the Chancery Division declaring it valid and enforceable.