776 A.2d 821 (2001)
342 N.J. Super. 262
ELIZABETH BOARD OF EDUCATION, Plaintiff-Appellant,
v.
NEW JERSEY TRANSIT CORPORATION, Defendant-Respondent, and
Elizabeth, Plainfield & Central Railway Company and/or Public Service Railway Company, Defendants, and
The City of Elizabeth, Defendant-Intervenor.
Superior Court of New Jersey, Appellate Division.
Submitted May 2, 2001.
Decided May 25, 2001.
*822 Conti & Mallozzi, attorneys for appellant (David W. Conti, Jr., of counsel and on the brief).
John J. Farmer, Jr., Attorney General of New Jersey, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Alvin R. Little, Deputy Attorney General, on the brief).
Before Judges KING, COBURN and LEFELT.
The opinion of the court was delivered by KING, P.J.A.D.
The Elizabeth Board of Education (Board) appeals from a judgment dismissing its complaint which sought to condemn property owned by the New Jersey Transit Corporation (NJT). The board wanted the property for educational purpose. We affirm because there is no express, or necessarily implied, statutory authority which permits a board of education to condemn land owned by the State. We also affirm the counsel fees awarded to NJT pursuant to N.J.S.A. 20:3-26(b).
The property in question is designated as Block 8, Lot 1123 on the Elizabeth tax map, commonly known as 801-871 Division Street, located at the intersection of Division and Livingston Streets. The site, between four and six acres, is currently vacant land. NJT has owned the property for about twenty years.
NJT is a corporation and "an instrumentality of the State exercising public and essential governmental functions." N.J.S.A. 27:25-4(a). NJT is allocated to but independent of the Department of Transportation. Ibid. See generally N.J.S.A. 27:25-1 to -34 (New Jersey Public Transportation Act of 1979, L. 1979, c. 150).
Since early 1999, NJT and the City of Elizabeth (City) have been engaged in negotiations for the sale of the property, which the City intends to use for redevelopment purposes. In mid 1999 the Board informed NJT that it wanted to acquire the property to build educational facilities to relieve overcrowding. NJT told the Board to discuss the matter with the City. The Board apparently had difficulty obtaining a response from the City but eventually was informed that the property was *823 scheduled for future development by the City. Upon receipt of this letter, the Board informed the City it intended to use all of its legal power to acquire the property for public school purposes, including the power of condemnation. The Board then wrote to NJT expressing its desire to acquire the property and inquiring as to NJT's willingness to enter into negotiations for sale of the property. NJT informed the Board it was in the process of negotiating a sale of the property to the City and it did not intend to negotiate with the Board.
On March 23, 2000 the Board informed NJT that it intended to institute condemnation proceedings and offered to purchase the property at an appraised price of $1,075,000. NJT responded that the property could not be condemned because it was owned by an instrumentality of the State. On May 2, 2000 the Board adopted a resolution authorizing the acquisition of the property for up to $1,075,000, by negotiation and purchase or, in the event that failed, by the exercise of the Board's power of eminent domain.
On May 23, 2000 the Board filed a complaint for condemnation. In addition, the Board filed a notice of lis pendens and a declaration of taking. Also on May 23, 2000 Judge Beglin signed an order to show cause and an order entitling the Board to take immediate possession of and title to the property and directing that $1,075,000 be paid into court.
On July 3, 2000 NJT filed an answer and a motion to dismiss the complaint. The motion was heard by Judge Beglin on July 7, 2000; he rendered an oral decision that day granting the motion. He also signed an order divesting the Board of title to the property; voiding and nullifying the declaration of taking and the lis pendens, and ordering NJT to advise him within thirty days whether it would seek a hearing regarding damages, counsel fees and costs. On that date, the judge also signed an order which allowed the City to intervene in the action and entered a judgment dismissing the action. On August 2, 2000 NJT advised the judge it would seek damages, attorney fees and costs.
On August 18, 2000 the Board filed a notice of appeal from the July 2000 orders. On August 21, 2000 the judge signed an order awarding NJT $9,000 in attorney fees and dismissing the complaint with prejudice. On September 29, 2000 the Board filed an amended notice of appeal from the August 21, 2000 order. We denied the Board's motion for relief by way of entry onto the subject property during the appeal.

I
The Board contends that it may condemn the subject property because there are no restrictions in Title 18A on its power of condemnation and the Legislature has explicitly barred condemnation of State property by counties and municipalities by statute, but has not barred condemnation by boards of education. NJT responds that no statute expressly or impliedly authorizes a board of education to condemn State property.
In his oral opinion, Judge Beglin stated:
If you go back and begin to put together how a board of education in the year 2000 is vested with and able to, under the law, exercise its power of eminent domain, I think you realize that it is a power with limitation and not a power that is absolute or without limitation.
.... I read ... the power of eminent domain to the board of education as equating that power with the comparable power possessed by local government, the municipality, and indeed, *824 when Title 18 in talking about the limitation of the power, uses the phrase "pursuant to law and to statute." We know by that brief phrase the eminent domain act has been brought into and incorporated in the education law, and therefore does inform that power possessed by a board of education.
On a very fundamental level, the position of the State in my judgment is correct. Although a board of education unquestionably may negotiate with the State and seek to acquire property of the State through negotiations, just like a municipality, it lacks the ability, shy of successful negotiations, to condemn.
Under our governmental structure, the power reposing in the State is so encompassing that it must include the ability to say yea or nay as to the disposition of its property, and that would be so compromised were a board of education found to have the ability to condemn that I would say you have to find an explicit grant before you could comfortably conclude the power is there and the "public or private phrase," with the absence of the 40A language, is not a direct, explicit grant of power.
N.J.S.A. 18A:20-2 provides:
The board of education of any district may, in and by its corporate name, acquire, by purchase or lease, receive, hold, hold in trust and sell and lease real estate and personal property and may take and condemn lands and other property for school purposes in the manner provided by law relating to the taking and condemnation of property for public purposes, subject to the restrictions provided in this title.
The Board contends, and NJT does not dispute, that there are no restrictions elsewhere in Title 18A on a board of education's power to condemn, nor have we found any. In addition, while the phrase "in the manner provided by law relating to the taking and condemnation of property for public purposes" is an apparent reference to the Eminent Domain Act, N.J.S.A. 20:3-1 to 50, the Board concedes that the Act, and specifically the reference in N.J.S.A. 20:3-6 to condemnation of public property, is not an enabling statute for boards of education.
Rather, the Board cites N.J.S.A. 40A:12-4, which bars counties and municipalities from "acquiring" State property, including by condemnation, N.J.S.A. 40A:12-2(a), without the State's express consent, as evidence that had the Legislature wanted to restrict boards of education from condemning State property, it would have done so. The Board relies upon the legal maxim expressio unius est exclusio alterius, meaning the express mention of one thing implies exclusion of all others. Allstate Ins. Co. v. Malec, 104 N.J. 1, 8, 514 A.2d 832 (1986). This maxim is merely an aid in determining legislative intent, not a hide-bound rule of law. It must be applied with caution. Blind and mechanical application of maxims can often lead to an improper interpretation of the statute under scrutiny. Ibid. Thus, the implication must be clear and compelling. "The ultimate question is `whether in a precise context an express provision with respect to a portion of a topic reveals by implication a decision with respect to the remainder.' "Wright v. Port Auth. of New York and New Jersey, 263 N.J.Super. 6, 20, 621 A.2d 941 (App.Div.) (quoting Reilly v. Ozzard, 33 N.J. 529, 539, 166 A.2d 360 (1960)), certif. denied, 133 N.J. 442, 627 A.2d 1147 (1993). For the reasons we express, we find the maxim is not applicable in this instance.
"It is ... fundamental that local boards of education, as creations of the State, are capable of exercising only those *825 powers which are granted expressly or by necessary or fair implication by the Legislature." Fair Lawn Educ. Ass'n v. Fair Lawn Bd. of Educ., 161 N.J.Super. 67, 72, 390 A.2d 1194 (App.Div.1978), aff'd, 79 N.J. 574, 401 A.2d 681 (1979). "The Legislature may authorize one public agency to condemn property already devoted to a public use by another public agency, but the intention to grant such authority must be manifested in express terms, or by necessary implication." Plainfield-Union Water Co. v. City of Plainfield, 83 N.J.L. 332, 336, 85 A. 321 (Sup.Ct.1912), aff'd, 84 N.J.L. 634, 87 A. 448 (E. & A.1913). See also A.S. Klein, Annotation, Power of Eminent Domain as Between State and Subdivision or Agency Thereof, or as Between Different Subdivisions or Agencies Themselves, 35 A.L.R.3d 1293, 1326-34 (1971). This principle accords with the general precept that
[a] grant of the power of eminent domain, which is one of the attributes of sovereignty most fraught with the possibility of abuse and injustice, will never pass by implication; and when the power is granted, the extent to which it may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained.
[26 Am.Jur.2d Eminent Domain § 20 (1996) (footnote omitted).]
See also State v. Boone County, 78 Neb. 271, 110 N.W. 629, 630 (1907) ("In this country it is generally held that the sovereign power is not bound by general words in a statute, but only when included expressly or by necessary implication").
The rule is particularly applicable to lands owned and used by the State; thus, "a general grant of the right of condemnation does not include State property, whether in actual use or [as here] not ... unless the State is expressly mentioned therein." In re Condemnation of Lands in St. Louis County, 124 Minn. 271, 144 N.W. 960 (1914). See also In re Cruger Ave., 238 N.Y. 84, 143 N.E. 799, 800 (1924) (the power given to New York City to condemn property did not extend to unappropriated State land in the city where not expressly authorized by statute). This doctrine accords with the additional precept that not all condemnors enjoy equal powers of eminent domain; rather, a hierarchy of entities exists, with the State at the top because of its sovereign authority. Matter of Commissioner's Order Denying Permit Application 93-1024, 527 N.W.2d 173, 176 (Minn.Ct.App.1995) (holding watershed district lacked power to condemn property owned by state over the state's objection). See also 1A Nichols on Eminent Domain, § 3.01[1] and [3] (rev.3d ed.2000) (distinguishing between a primary exercise of the power of eminent domain by the sovereign itself and a secondary exercise by delegation of the power).
In this instance, there is no express grant of the power to condemn State property. Nor do we think the express withholding of the power from counties and municipalities necessarily implies any certainty that boards of education may acquire State property by eminent domain. As noted, such an implication must be "clear and compelling"this appears to equate to a "necessary" implication.
St. Louis County is a case where "necessary implication" was established. There, a statute required that notice be given to the Secretary of State where the property to be condemned by "certain public service corporations" was located upon "lands belonging to the state." 144 N.W. at 960-61. In holding a school district could condemn land belonging to the state for educational purposes, the Minnesota court stated: "[T]he Legislature appreciated the fact that it might in particular instances be necessary to take state lands for some *826 other public use, and for the purpose of protecting its rights in such a case required that the notice of the proceeding be served upon the Secretary of State," thereby "not only recogniz[ing] the right as one of probable necessity, but by necessary implication grant[ing] the same." Id. at 961. In the case before us, there is no comparable reference to "state lands" in Title 18A, nor have we found any notice requirement similar to that in St. Louis County from which the legislative intent to permit boards of education to condemn land owned by the State may be fairly inferred.
In support of its position, the Board cites New Jersey Turnpike Authority v. Parsons, 3 N.J. 235, 69 A.2d 875 (1949). There, the Court held the Turnpike Authority Act, which authorized the Turnpike Authority to condemn "public lands," when read in its entirety, and in light of "the absence of a clear and unambiguous grant of authority to the Turnpike Authority to take state property by condemnation," did not grant the Turnpike Authority any power of general condemnation of property owned or held by the State. Id. at 248-49, 69 A.2d 875.
This holding actually tends to support NJT's position. The Board focuses on Justice Heher's dissent where he took the position that the Act contained a clear and unambiguous grant of the right to take State property by condemnation because use of the phrase "public lands," in conjunction with another statutory provision authorizing the State to convey property to the Turnpike Authority, constituted the grant of authority to condemn State property by "clear implication." Id. at 252, 69 A.2d 875. However, aside from the Board's reliance on a dissenting opinion, N.J.S.A. 18A:20-2 does not specifically authorize boards of education to condemn "public lands" and clearly does not imply the Legislature intended to grant to boards of education the power to condemn State property. Finally, the Board cites the "compelling" need for condemnation in this instance in light of Abbott v. Burke, 153 N.J. 480, 710 A.2d 450 (1998), which spells out the constitutional obligation of "special needs" school districts to provide a constitutionally "thorough and efficient" public education. However, that argument must be directed to the Legislature, not to the courts. We hold that the Board does not have the power to condemn the State property in question.

II
The Board also contends the counsel fee award should be reversed because the judge initially stated that he would not award counsel fees, NJT's submissions were not factually supported, and the judge failed to hold a hearing on the counsel fee request. NJT responds the award of the counsel fees is mandated by statute, no hearing is required before counsel fees can be awarded, and it submitted sufficient documentation.
The relevant statute, N.J.S.A. 20:3-26(b), provides:
If the court renders final judgment that the condemnor cannot acquire the real property by condemnation ... then the court shall award the owner of any right, or title to, or interest in such real property, such sum as will reimburse such owner for his reasonable costs, disbursements and expenses actually incurred, including reasonable attorney, appraisal, and engineering fees.
Because the judge properly dismissed the Board's complaint, N.J.S.A. 20:3-26(b) mandates the award of counsel fees, if requested by the State.
The Board contends the counsel fee award should be reversed because the *827 judge initially stated he would not award such fees. At the July 7 hearing, the judge made somewhat ambiguous remarks regarding NJT's right to counsel fees under the statute, at one point stating "[o]ther than legal fees," he did not see any damages to NJT, while at another point indicating legal fees were the type of expense which would come within the statute. We find nothing which prevents a court from awarding counsel fees after expressing an initial reluctance to do so.
The Board further contends counsel fees were improperly awarded because there was no hearing. We find no such requirement either in the Court Rules, which merely require submission of an affidavit of service, R. 4:42-9(b), or in the case law. See Cohen v. Fair Lawn Dairies, Inc., 44 N.J. 450, 452, 210 A.2d 73 (1965) ("no reason for requiring plenary proof, provided the record before the trial court, including the affidavit of services, is sufficiently complete to enable it to reach a fair determination as to the extent of the legal services rendered"); Jacobitti v. Jacobitti, 263 N.J.Super. 608, 618-19, 623 A.2d 794 (App.Div.1993) (no need for an "extensive and time-wasting" hearing regarding counsel fees in a matrimonial action where the papers in support of the application are not patently insufficient), aff'd, 135 N.J. 571, 641 A.2d 535 (1994); Westfield Centre Serv., Inc. v. Cities Serv. Oil Co., 172 N.J.Super. 196, 205, 411 A.2d 714 (App.Div.1980) (unless trial court determines that a plenary hearing is necessary for an equitable resolution of the amount of counsel fees to be awarded, matter should be established by detailed certification or affidavit), aff'd, 86 N.J. 453, 432 A.2d 48 (1981). Moreover, there is no indication in the record that the Board requested such a hearing.
Finally, the Board contends that the counsel fee award did not have a factual basis because NJT's submissions were insufficient. NJT submitted a request for counsel fees and submitted an affidavit of legal services in which it sought $9,840 in counsel fees based upon a $150 hourly rate, in accordance with rates established by the Division of Law. In response, the Board informed the court it believed the request was not adequately supported by the papers submitted by NJT because there was no indication of the services actually performed. NJT then submitted a letter explaining the billing codes referred to in the prior submission. The judge then awarded $9,000 in counsel fees.
R. 4:42-9(b) requires
all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a). The affidavit shall also include a recitation of other factors pertinent in the evaluation of the services rendered, the amount of the allowance applied for, and an itemization of disbursements for which reimbursement is sought.
The factors in RPC 1.5(a) relating to the reasonableness of a fee include: the time and labor required; the novelty and difficulty of the questions involved; the fee customarily charged; the amount of time and the results obtained; and the ability of the lawyer performing the services.
The Board does not challenge the amount of the fee awarded but the sufficiency of the submissions. The Board claims NJT's submissions were insufficient because they did not state the services rendered with enough specificity and describe the nature of the work performed. However, the codes submitted by NJT do show the number of hours and types of services. Moreover, an award of counsel fees may be affirmed even if the affidavit of services is deficient. Cf. Dotsko v. Dotsko, 244 N.J.Super. 668, 679-80, 583 *828 A.2d 395 (App.Div.1990) (rejecting challenge to counsel fee award by finding failure to provide required certification was harmless). We are satisfied the fee award in favor of the State was amply supported in the record.
Affirmed.