# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0088-23

D.A.V.,

     Plaintiff-Respondent,

v.

M.N.,

     Defendant-Appellant.

_____

Argued June 3, 2024 – Decided July 1, 2024

Before Judges Gilson and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-1938-23.

Timothy J. Dey argued the cause for appellant.

Samuel J. Berse argued the cause for respondent (Bearse Law, LLC, attorneys; Samuel J. Berse, on the brief).

PER CURIAM

Defendant M.N.[1] appeals from an August 8, 2023 final restraining order (FRO) entered against him in favor of his former girlfriend, plaintiff, pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 (PDVA), based on a predicate act of criminal mischief, N.J.S.A. 2C:17-3(a)(1).  M.N. also appeals from an amended FRO granting plaintiff attorney's fees.  For the reasons that follow, we affirm the entry of the FRO and the amended FRO awarding fees.

I.

We glean the following facts from the record.  The parties were in a dating relationship that ended in April 2023.  In June 2023, plaintiff obtained a temporary restraining order (TRO) against defendant, alleging criminal mischief, N.J.S.A. 2C:17-3(a)(1), harassment, N.J.S.A. 2C:33-4, and contempt, N.J.S.A. 2C:29-9(b).  Defendant also obtained a TRO against plaintiff, which was later dismissed following the FRO hearing.[2]

During the two-day FRO hearing, the court heard testimony from both parties.  Plaintiff testified that on June 3, 2023, she agreed to go to defendant's

_____

[1] We use the parties' initials pursuant to R. 1:38-3(d)(10).

[2] Defendant does not appeal from the dismissal order, and we confine our discussion to the facts surrounding plaintiff's FRO.

home to retrieve an item, but later decided against going. That evening, defendant sent her a text message and called seven times, to which plaintiff did not respond.

Later that evening, plaintiff found her car's tires had been slashed outside of her current boyfriend's apartment. Plaintiff viewed the security footage from the apartment complex and saw defendant's car circling the parking lot at approximately 10:30 p.m. She also identified the man who exited the vehicle as defendant because of his tattoos and his beard. Plaintiff further described what she saw in the video: defendant circled the parking several times and on the last pass, he parked his vehicle on the street. After exiting the vehicle, defendant covered his face, walked towards plaintiff's car, slashed her tires, and ran off.

The following day, she confronted defendant by text message and asked why he slashed her tires. In response, defendant did not admit or deny his actions; instead, that same day he sent $375 to plaintiff through a digital platform used for money transfers. Plaintiff testified she needed an FRO because she was "very afraid" defendant may harm her, and feared what he was capable of, given his reaction after she did not respond to his calls and his ability to find her.

A-0088-23

Although the court advised defendant, as well as his counsel, that defendant could present a rebuttal defense to plaintiff's testimony and evidence, defendant testified only as to his cross-complaint for an FRO.

After reviewing the parties' testimony and evidence, and making credibility determinations, the trial court entered an FRO, finding defendant committed criminal mischief by slashing plaintiff's tires. It also found an FRO was necessary to protect plaintiff from immediate danger, including protecting her property, and to prevent further abuse. The court found the predicate act of contempt was not satisfied because it found "driving by [plaintiff] and looking at [her]" was not proof of or "the type of contempt the law" intended to prevent. Similarly, it found the predicate act of harassment was not satisfied because there was no evidence to support the allegation.

In reaching its findings, the court relied on the text messages between the parties, plaintiff's call logs, and a screenshot of the money transfer. Over defense counsel's objection, the court admitted into evidence a photograph taken by plaintiff from the security footage of the incident, allegedly depicting defendant. The court found the photograph did not show the person was defendant and did not rely upon it. However, it did credit plaintiff's testimony that she viewed the video and "recognized him" by his distinct features. Further,

the court found defendant never refuted the allegation, and "did not deny slashing her tires. And, after plaintiff asked defendant why he slashed her tires, he sent her $375, with no explanation during his testimony."

The trial court evaluated the factors set forth in N.J.S.A. 2C:25-29(a)(1)-(6), pursuant to the second prong of Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006) and considered whether an FRO was necessary to protect plaintiff from the threat of future violence or prevent further harm. It found an FRO was necessary to protect plaintiff from immediate danger to her person or property and to prevent further abuse "since [defendant] saw fit to go" and "f[i]nd her car or discovered where her car was and slashed her tires."

The court also found plaintiff "to be a competent witness" as "[s]he [w]as clear in her testimony as to what happened," and was "easily the more credible witness." Conversely, the court found defendant was not credible in his testimony.

After entry of the initial FRO on August 8, 2023, plaintiff's counsel submitted a letter brief and certification of services for attorney's fees on September 5, 2023, to which defendant did not respond. The court entered an amended order assessing $11,095 in attorney's fees against defendant on September 18. The order clarified "the FRO/[amended]FRO was issued by

default" because "defendant was not present at the time the [amended FRO] was issued on [September 18, 2023]" and "counsel for the defendant did not respond" to plaintiff's application.

This appeal followed.

## II.

Our review of an FRO is generally limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). We are "bound by the trial court's findings 'when supported by adequate, substantial, credible evidence.'" Peterson v. Peterson, 374 N.J. Super. 116, 121 (App. Div. 2005) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "This deferential standard is even more appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533 (App. Div. 2011) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C., 463 N.J. Super. at 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)); see also S.K. v. J.H., 426 N.J. Super. 230, 238 (App. Div. 2012). However, we review conclusions of law de novo. Ibid.

III.

When determining whether to issue an FRO pursuant to the PDVA, a trial court must make two distinct determinations.  Silver, 387 N.J. Super. at 125-27.  First, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred."  Id. at 125.  If a predicate act is established, "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence."  D.M.R. v. M.K.G., 467 N.J. Super. 308, 322 (App. Div. 2021); Silver, 387 N.J. Super. at 126-27.  "Although this second determination—whether a domestic violence restraining order should be issued—is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary . . . to protect the victim from an immediate danger or to prevent further abuse."  Silver, 387 N.J. Super. at 127.

On appeal, defendant asserts the trial court's factual findings were against the weight of the evidence, it improperly admitted plaintiff's photograph and, because the surveillance video was never admitted, plaintiff's testimony was impermissible hearsay.  We disagree.

A-0088-23

The trial court found defendant committed criminal mischief by slashing plaintiff's car tires. A person commits the offense of criminal mischief if he "[p]urposely or knowingly damages [the] tangible property of another." N.J.S.A. 2C:17-3(a)(1). Despite defendant's assertions, the trial court did not rely on the photograph; rather it found payment of the $375 and the lack of defendant's denial in the text messages dispositive. Further, it found compelling that defendant never denied the allegations or explained what occurred during his testimony. Lastly, the court credited plaintiff's testimony that she viewed the video and "recognized" defendant by his distinct features. We discern no error in the trial's court finding of the predicate act of criminal mischief.

Reviewing the totality of the circumstances, the probability for further abuse to plaintiff is supported by credible evidence in the record. The court found an FRO was necessary to protect plaintiff and her property from immediate and future harm as directed by the PDVA, because defendant "saw fit to go to her" boyfriend's home, find "her car or discovered where her car was[,] slash[] her tires." See N.J.S.A. 2C:25-29(a)(2). Plaintiff testified she was afraid of defendant because of what he was capable of doing because he was able to find her when he slashed her tires, and once before that incident, without her having informed him of her whereabouts.

8

Defendant also contends the court awarded counsel fees "without serving defendant's counsel or affording [him] any type of response." An appellate court "will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011) (quoting Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008)). N.J.S.A. 2C:25-29(b)(4) expressly provides a court is permitted to award "monetary compensation for losses suffered as a direct result of the act of domestic violence," including reasonable attorney's fees.

Because fees and costs in a domestic violence action are awarded as compensatory damages, an award is "not subject to the traditional analysis" for an award of fees in family-type claims pursuant to N.J.S.A. 2A:34-23 and the court is not obliged to consider the parties' financial circumstances. McGowan v. O'Rourke, 391 N.J. Super. 502, 507 (App. Div. 2007) (quoting Schmidt v. Schmidt, 262 N.J. Super. 451, 453 (Ch. Div. 1992)). "[T]o be entitled to fees, '[t]he fees must be a direct result of the domestic violence; they must be reasonable; and pursuant to R. 4:42-9(b), they must be presented by affidavit.'" Id. at 507 (second alteration in original) (quoting Schmidt, 262 N.J. Super. at 454); see Grandovic v. Labrie, 348 N.J. Super. 193, 197 (App. Div. 2002).

A-0088-23

Defendant's assertion that he was not properly served or provided an opportunity to reply to plaintiff's application is not supported by the record. "The minimum requirements of due process of law are notice and an opportunity to be heard." Klier v. Sordoni Skanska Const. Co., 337 N.J. Super. 76, 84 (App. Div. 2001) (citing Doe v. Poritz, 142 N.J. 1, 106 (1995)). There is no hearing required for a counsel fee award either pursuant to the rules of court, "which merely require submission of an affidavit of service, R. 4:42-9(b), or in the case law." Elizabeth Bd. of Educ. v. N.J. Transit Corp., 342 N.J. Super. 262, 271 (App. Div. 2001).

On September 5, 2023, plaintiff's counsel sent a certification of attorney's services to the court and defendant's counsel. Based on the record, defendant simply did not respond, despite the time and opportunity to do so. Moreover, defendant does not claim plaintiffs' counsel fees were (1) not the direct result of his domestic violence; (2) unreasonable; or (3) unsupported by affidavit.

To the extent we have not specifically addressed defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-0088-23