**FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie Mac"); Federal Insurance Company, Cross–Appellants**

v.

**SCOTTSDALE INSURANCE COMPANY, Appellant**

**No. 01–4271, 01–4356.**

United States Court of Appeals, Third Circuit.

Argued Dec. 10, 2002.

Filed Jan. 22, 2003.

Theresa E. Mullen (argued), Allan Maitlin (argued), Sachs, Maitlin, Fleming, Greene, Wilson & Marotte, West Orange, NJ, for Appellant/Cross–Appellee Scottsdale Insurance Company.

Gerard H. Hanson (argued), Todd J. Leon, Hill Wallack, Princeton, NJ, for Appellees/Cross–Appellants FHMLC and Federal Insurance Company.

Before FUENTES, and GARTH, Circuit Judges, and WALLACH, Judge.*

## OPINION OF THE COURT

GARTH, Circuit Judge.

This case involves a controversy over what obligations Scottsdale Insurance Company ("Scottsdale"), the appellant/cross-appellee, owed to appellee/cross-appellant Federal Home Loan Mortgage Corporation ("Freddie Mac")[1] with respect to costs and payments incurred by Freddie Mac in defending, litigating, and settling various lawsuits filed by persons who alleged damages from a fire that occurred in an apartment building owned by Freddie Mac.

The district court granted partial summary judgment for Freddie Mac in the amount of $427,234.37, plus attorney's fees and prejudgment interest. We will affirm that judgment.

Prior to reviewing the district court's judgment on the merits in Parts III and IV of this opinion, however, we consider a significant question concerning our appellate jurisdiction in Part II.

## I.

The event from which this case arose was a fire that took place in February 1996 in an apartment building in East Orange, New Jersey. The fire was apparently started due to an accident that occurred when a thirteen-year-old boy was using a cooking range. Several of the residents filed suit against Freddie Mac, which owned the building, and Sibley Real Property Services ("Sibley"), Freddie Mac's property manager.[2]

Freddie Mac and Sibley filed a third-party complaint against T & R Alarm Systems, Inc. ("T & R") based on T & R's contracts related to the installation and/or

---

* Honorable Evan J. Wallach, United States Court of International Trade, sitting by designation.

1. The other appellee/cross-appellant in this case is Federal Insurance Company, Freddie Mac's insurer. Earlier, Vigilant Insurance Company had been erroneously named as the insurer and as Freddie Mac's co-plaintiff in the complaint against Scottsdale, but Freddie Mac moved before the district court to substitute Federal Insurance Company for Vigilant. Hereinafter, references in this opinion to "Freddie Mac" should be understood to refer collectively to Freddie Mac and Federal Insurance Company, unless otherwise specified.

2. Sibley was not a party to the proceedings below and is not a party to this appeal or cross-appeal.

maintenance of the fire and smoke alarm systems, including exit signs and emergency lighting systems, in the apartment building. The third-party complaint alleged that the underlying and primary lawsuits contained allegations that these systems were insufficient or ineffective. Prior to commencing its work on the premises, T & R had purchased an insurance policy from appellant/cross-appellee Scottsdale Insurance Company ("Scottsdale"). The Scottsdale policy listed Freddie Mac and Sibley as "additional insureds."

During discovery related to the third-party complaint against T & R, Freddie Mac claimed that T & R, which was represented by the same counsel representing Scottsdale, failed to inform Freddie Mac about its insurance policy, or to produce a copy of the policy. Eventually, the magistrate judge ordered T & R to produce the insurance policy.

Freddie Mac claims that it and Sibley as co-insureds sought coverage from Scottsdale within three weeks after the insurance policy was produced by T & R, but Scottsdale did not respond to their demands.

Freddie Mac thereafter filed a third-party complaint against Scottsdale on October 25, 1999; and filed an amended complaint on December 7, 1999. The amended complaint contained three counts. In Count One, Freddie Mac sought a declaratory judgment that the insurance policy issued by Scottsdale obliged Scottsdale "to defend and indemnify Freddie Mac and Sibley as to the underlying claims and to indemnify both Freddie Mac, Sibley, and Vigilant for all settlement monies, costs, expenses, and attorney's fees arising from the underlying claim." Am. Compl. ¶¶ 16–17.

In Count Two, Freddie Mac alleged that Scottsdale breached an implied covenant of good faith and fair dealing by failing to investigate, process, and grant Freddie Mac's claims that Scottsdale was obliged to defend and indemnify Freddie Mac, and thus that Freddie Mac was not only entitled to actual and consequential damages, but it was entitled as well to exemplary and punitive damages and attorney's fees and costs incurred in the instant litigation. *Id.* ¶¶ 20–24.

In Count Three, Freddie Mac alleged that Scottsdale had breached its insurance contract by failing to defend and indemnify Freddie Mac for the underlying claims, and for breaching the implied duty of good faith and fair dealing, as asserted in Count Two. *Id.* ¶ 27.

Freddie Mac moved for partial summary judgment on Count One alone, and Scottsdale moved for summary judgment in its favor on all three counts. The district court entered an order on March 20, 2001, granting Freddie Mac's motion for partial summary judgment on Count One, and denying Scottsdale's motion for summary judgment. The district court reasoned that under New Jersey law, Scottsdale had a duty to defend Freddie Mac because Freddie Mac was named as an additional insured on the policy, and the complaints in the underlying lawsuits by the residents of the apartment building made claims that were "clearly connected to T & R work under the alarm system." *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.,* Civ. No. 99–05056 (bench opinion) (Mar. 19, 2001) [hereinafter *District Court Bench Op.*], at 60, App. 70.

The district court concluded that Scottsdale also had a duty to indemnify Freddie Mac for the settlement amounts, reasoning that Scottsdale was equitably estopped from denying coverage because "T & R's and Scottsdale's conduct, or lack of participation, failed to meet the insureds' reasonable expectation of protection generated by the fiduciary duty to deal with

[Freddie Mac] fairly and to defend" Freddie Mac against the claims made by those alleging injuries due to the fire. *Id.* at 71, App. 81.

The district court thus granted partial summary judgment to Freddie Mac and directed Scottsdale to pay Freddie Mac $427,234.37, reflecting reimbursement of defense costs in the amount of $101,113.87 and settlement payments of $326,120.50. *See Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.,* Civ. No. 99–05056 (Oct. 12, 2001), slip op. at 3.

Following this determination, the district court, in an order dated October 12, 2001, awarded attorney's fees to Freddie Mac in the amount of $38,261.66, and, having granted Freddie Mac's motion for prejudgment interest, set the amount of prejudgment interest at $32,612.05 in an order dated October 19, 2001.

The district court then entered a Consent Judgment, to which the parties had agreed, on November 1, 2001. The Consent Judgment, the text of which we reproduce, *infra*, purported to permit an appeal by Scottsdale from the district court's grant of summary judgment to Freddie Mac on Count One, notwithstanding that Counts Two and Three were dismissed *without prejudice.*

Scottsdale filed a timely notice of appeal on November 28, 2001, and Freddie Mac cross-appealed.

## II.

The district court had federal subject matter jurisdiction over this action pursuant to 12 U.S.C. § 1452(f)(2).[3] In the posture presented to us at the time of oral argument, the Consent Judgment from

which the appeal was taken could not vest us with appellate jurisdiction.

Neither party addressed the subject of appellate jurisdiction in their briefs to the Court. We therefore requested supplemental letter-memoranda from the parties addressing the issue of appellate jurisdiction. After receiving supplemental briefing from the parties, we also directed the parties to be prepared to discuss at oral argument a number of authorities we had cited to them.

### A. The Consent Judgment

As noted earlier, the district court entered a Consent Judgment, which provided as follows:

THIS MATTER having been presented to the Honorable Katharine S. Hayden by way of joint application for entry of Consent Judgment; and the parties having agreed to the form of this Order;

IT IS on this 25th day of Oct., 2001, hereby ORDERED that Judgment be entered in favor [of] the plaintiffs in the amount of $427,234.37 in accordance with this court's Order and Bench Opinion of March 19, 2001 granting plaintiff's Motion for Partial Summary Judgment as to Count One of the Complaint.

IT IS FURTHER ORDERED that Count Two and Three of plaintiffs' Complaint is [sic] *hereby dismissed, without prejudice, subject to the plaintiffs' right to reinstate* Counts Two and Three if the March 19th Order should be vacated and this matter remanded for trial by the Third Circuit Court of Appeals based upon the appeal the defendant has represented will be filed in accordance with the Rules of Court; and

---

**3.** That section provides that "all civil actions to which the [Federal Home Loan Mortgage] Corporation is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value." 12 U.S.C. § 1452(f)(2).

IT IS FURTHER ORDERED that entry of this Consent Judgment will not preclude plaintiff from otherwise filing future applications seeking an award of counsel fees in accordance with the Rules of Court and applicable case law; and

IT IS FURTHER ORDERED that post-judgment interest will be added to this Consent Judgment in accordance with the Rules of Court to be calculated as of the time of satisfaction of this Consent Judgment; and

IT IS FURTHER ORDERED that *this Consent Judgment shall be deemed final pursuant to Rule 54(b)* for purposes of defendant's intent to appeal this court's Judgment of March 19, 2001 in favor of the plaintiffs in the amount of $427,234.37.

Consent Judgment at 1–2, App. 8–9 (emphasis added).[4]

It was from this judgment that Scottsdale appealed and Freddie Mac cross-appealed. The Consent Judgment, by its terms, kept Counts Two and Three alive by dismissing them *without prejudice*, and specifically allowed their reinstatement if we were to reach a particular outcome.

### B. *Finality under § 1291*

The finality requirement of 28 U.S.C. § 1291 is grounded "not in merely technical conceptions of 'finality,'" but rather on a long-recognized policy "against piecemeal litigation." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). *See also Coopers & Lybrand v. Livesay,* 437 U.S. 463, 471, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) ("The finality requirement in § 1291 evinces a legislative

judgment that '[r]estricting appellate review to 'final decisions' prevents the debilitating effect on judicial administration caused by piecemeal appeal disposition of what is, in practical consequence, but a single controversy.'") (quoting *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)).

■ Given the strong policy against piecemeal litigation that underlies the finality requirement of § 1291, we have adhered consistently to the general rule that we lack appellate jurisdiction over partial adjudications when certain of the claims before the district court have been dismissed *without prejudice*. *See, e.g., Erie County Retirees Ass'n v. County of Erie, Pa.,* 220 F.3d 193, 201 (3d Cir.2000) ("Of course, ordinarily we do not have jurisdiction under 28 U.S.C. § 1291 of an appeal from an order partially adjudicating a case when an appellant has asserted a claim in the district court which it has withdrawn [without prejudice] or dismissed without prejudice."), *cert. denied,* 532 U.S. 913, 121 S.Ct. 1247, 149 L.Ed.2d 153 (2001). *See also Sullivan v. Pacific Indem. Co.,* 566 F.2d 444, 445 (3d Cir.1977).

Our recent decision in *Verzilli v. Flexon, Inc.,* 295 F.3d 421 (3d Cir.2002), spoke directly to the issue of the appealability of a Consent Judgment order that was remarkably similar to the Consent Judgment in the instant case. In *Verzilli,* we held that a Consent Judgment did not constitute an appealable final order because the termination of the litigation was contingent upon the Court of Appeals' reaching a particular result. *Id.* at 425.[5]

In *Verzilli,* the district court had entered an order restricting the plaintiffs'

---

**4.** The Consent Judgment was entered on November 1, 2001, though it was apparently signed on October 25, 2001.

**5.** The Consent Judgment in *Verzilli* did not by its terms involve a dismissal without preju-

dice, but the fact that the termination of the litigation was contingent upon the decision of this Court was functionally similar to a dismissal without prejudice. *Cf. Verzilli,* 295 F.3d at 424 n. 2 (discussing dismissals without prejudice).

claim for damages because of a failure to follow the district court's pre-trial rules governing discovery. *Id.* at 422. Thereafter, the parties reached an agreement to enter into a Consent Judgment, and the district court entered a Consent Judgment that provided for judgment for $13,000 in favor of the plaintiffs, and included a statement that "[t]his is a final order and there is no just cause for delay." *Id.* Accompanying the Consent Judgment was a stipulation that the defendants "will be permitted to present a full and complete defense to all issues in this case" if we were to reverse the district court's decision; but that the proceedings in the case would be terminated if we did not reverse. *Id.* The stipulation also noted that "it is further understood and agreed that the Consent Judgment ... is a final appealable order pursuant to 28 U.S.C. § 1291." *Id.*

The *Verzilli* Court held that the contingent nature of the Consent Judgment and stipulation defeated finality:

> [T]he parties' stipulation in the case before us covers only one possible outcome of the appeal—an affirmance by this Court. According to the stipulation, if this Court should decide to reverse, then the matter would return to the District Court for a full trial. Similarly, if this Court declined to decide the propriety of

the pretrial ruling, the case would be remanded to the District Court.

> Therefore, ... only one possible ruling by this Court would effectively end the District Court's work. Left open is the possibility of two other dispositions, either a reversal or a dismissal for lack of appellate jurisdiction, that would require further adjudication by the District Court, namely, a full trial. Thus, the stipulation does not create finality in the Consent Judgment and, in the absence of that element, this Court lacks jurisdiction.

*Id.* at 425.

■ Our analysis in *Verzilli* is therefore directly applicable to this case. There, as here, under the terms of the Consent Judgment, "only one possible ruling by this Court would effectively end the District Court's work." *Id.* The Consent Judgment in the instant case provides that the litigation would end if we were to affirm the order granting partial summary judgment to Freddie Mac on Count One; but afforded Freddie Mac the "right to reinstate Counts Two and Three *if the March 19th Order should be vacated and this matter remanded for trial by the Third Circuit Court of Appeals*." Consent Judgment at 1–2 (emphasis added). The logic of *Verzilli* applies with equal force to the Consent Judgment in this case.[6]

---

6. Despite the *Verzilli* rule, we have entertained appellate jurisdiction where the remaining "without prejudice" claims were effectively barred, thus rendering the judgment final.

Thus, for example, in *Fassett v. Delta Kappa Epsilon,* 807 F.2d 1150 (3d Cir.1986), *cert. denied,* 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987), we held that appellate jurisdiction existed over an appeal where claims against one party had been dismissed without prejudice because "the ... statute of limitations had already run *as of the time of* [the party's] *dismissal.*" *Id.* at 1155 (emphasis in original). We explained that because the plaintiffs "retained no viable cause of

action against" the dismissed party, "we conclude that the dismissal, which was nominally without prejudice, was for our purposes, a final dismissal." *See also GFL Advantage Fund, Ltd. v. Colkitt,* 272 F.3d 189, 198–99 n. 3 (3d Cir.2001) (where district court had twice dismissed defendant's counterclaims for lack of specificity, we nonetheless exercised appellate jurisdiction because district court's summary judgment order "effectively barred" defendant from "re-filing" the counterclaims based on conclusion that defendant's "affirmative defenses [to plaintiff's claims]—which were identical to his counterclaims—failed as a matter of law").

440

Here, the Consent Judgment preserved Freddie Mac's right to reinstate Counts Two and Three, if we were to reverse and remand the district court's ruling. We had no reason to think, nor did the parties provide sufficient reasons in their supplemental briefing or at oral argument, that as a practical matter, Freddie Mac's remaining claims would be effectively barred. The Consent Judgment thus represented an inappropriate attempt to evade § 1291's requirement of finality. Both we and other Courts of Appeal have disapproved of such end-runs for the purpose of effectuating piecemeal appeals.

■ For example, in *Newfound Management Corp. v. Lewis,* 131 F.3d 108 (3d Cir.1997), we cited the views of the Seventh Circuit with approbation:

Litigants and courts cannot, by agreement, avoid the finality requirement of § 1291. While in this case the parties have settled their dispute, the settlement is not a final one, but a contingent one; if we affirm, the parties will go their own ways, but if we reverse the parties will continue to litigate the dispute.

*Id.* at 112 (quoting *Union Oil Co. of California v. John Brown, Inc.,* 121 F.3d 305, 309 (7th Cir.1997)). As the Ninth Circuit has also succinctly explained, "[L]itigants should not be able to avoid the final judgment rule without *fully relinquishing* the ability to further litigate unresolved claims." *Dannenberg v. Software Toolworks, Inc.,* 16 F.3d 1073, 1077 (9th Cir. 1994) (emphasis added).

The Consent Judgment in this case was the product of such a contingent settlement, and as such, lacked the requisite finality to permit appellate jurisdiction under § 1291.

## C. Purported Certification Under Rule 54(b) of the Federal Rules of Civil Procedure

Even if the Consent Judgment were not final under § 1291, the parties argued that the Consent Judgment had been certified for appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and that this certification vested us with appellate jurisdiction. We did not find such arguments persuasive.

■ Where an order is not final under § 1291, a district court may nonetheless certify the final disposition of fewer than all claims in an action for appeal pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. That rule provides:

When more than one claim for relief is presented in an action, ..., or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for entry of judgment.

FED. R. CIV. P. 54(b).

■ We review a district court's Rule 54(b) certification decision for an abuse of discretion. As the Supreme Court explained in *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956), "[T]he District Court *may,* by the exercise of its discretion in the interest of sound judicial administration, release for appeal final decisions upon one or more, but less than all, claims in multiple claim actions.... [A]ny abuse of that discretion remains reviewable by the Court of Appeals." *Id.* at 436–37, 76 S.Ct. 895 (emphasis in original).

At oral argument, counsel for Freddie Mac sought, unsuccessfully, to distinguish the situation in the instant case from that in *Verzilli* by pointing to the district

court's purported Rule 54(b) certification, and asserting that, even if the Consent Judgment was not final under § 1291, the 54(b) certification conferred finality upon the Consent Judgment.

We disagree. The district court made only the stark-naked statement that *"this Consent Judgment shall be deemed final pursuant to Rule 54(b)* for purposes of defendant's intent to appeal this court's Judgment of March 19, 2001 in favor of the plaintiffs in the amount of $427,234.37." Consent Judgment at 2, App. 9 (emphasis added). In so doing, the district court failed to make and give reasons for the "express determination that there is no just reason for delay," as the text of Rule 54(b) requires. The district court left us with no grounds upon which to review the district court's exercise of its discretion. Nor could we ascertain from the record a basis for such a certification. *See Carter v. City of Philadelphia,* 181 F.3d 339, 346–47 (3d Cir.1999).

Were it not for Freddie Mac's post-argument dismissal of the remaining counts with prejudice, we would have held that the district court's certification was an abuse of its discretion, and therefore would have dismissed the instant appeal because it lacked finality and did not meet the 54(b) requirement.[7]

■ In *Allis–Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360 (3d Cir. 1975), we explained, "A proper exercise of discretion under Rule 54(b) requires the district court to do more than just recite the 54(b) formula of 'no just reason for delay.' The court should clearly articulate the reasons and factors underlying its decision to grant 54(b) certification." *Id.* at 364. Thus, in *Allis–Chalmers,* we "incorporate[d] ... as a requirement for all Rule 54(b) certifications," *id.,* the Second Circuit's suggestion that

"the court, rather than incorporating in the certificate ... the conclusory language of Rule 54(b), would make a brief reasoned statement in support of its determination that, 'there is no just reason for delay' and its express direction for 'the entry of a final judgment as to one or more but fewer than all of the claims or parties' where the justification for the certificate is not apparent...."

*Id.* (quoting *Gumer v. Shearson, Hammill & Co., Inc.,* 516 F.2d 283, 286 (2d Cir. 1974)). We reasserted this requirement in *Anthuis v. Colt Indus. Operating Corp.,* 971 F.2d 999 (3d Cir.1992), in which we explained that *Allis–Chalmers* requires district courts to give "reasons to support its exercise of discretion." *Id.* at 1003 (citing *Allis–Chalmers,* 521 F.2d at 364).

■ Neither counsel at oral argument, nor we on our independent review of the record, could identify any relevant factors which would support a valid 54(b) certification. *See Allis–Chalmers,* 521 F.2d at 364. Therefore, because the district court failed to identify reasons supporting its attempt at a Rule 54(b) certification; because reasons supporting appealability were not apparent from the record, *cf. Carter,* 181 F.3d at 347; and because under no circumstances could an order which left open a count for punitive damages, Count Two, be divorced from a count for compensatory damages, Count One, it was evident that we did not have appellate jurisdiction and would be obliged to dismiss the appeal and cross-appeal.

■ Although we have explained that the district court provided an insufficient certification in the Consent Judgment, we

---

7. As it now stands, the Rule 54(b) certification is moot. Since Counts Two and Three have been dismissed *with prejudice,* Freddie Mac's action now contains only a disposed-of "final" claim, and so a Rule 54(b) certification would be irrelevant and unavailable.

would be remiss in failing to identify the centrality of the role of counsel in the 54(b) certification process. In seeking a certification under Rule 54(b), we expect counsel, as officers of the court and as advocates of their particular position, to assist the court by making appropriate submissions. Accordingly, it is not unreasonable for us to require counsel to assume the responsibility of filing a motion with the district court expressing the reasons and basis for a 54(b) certification so that the district court, if it adopts any or all of the bases proffered by counsel, can provide us with a rationale to review the Rule 54(b) certification appropriately.[8]

The district court's failure to explain why we should review a decision with respect to only one count, leaving other counts to be adjudicated thereafter does not permit us to discharge our appellate function intelligently, nor to accept for appeal the district court's bare-bones statement that its judgment met the requirements for appeal under Rule 54(b).

### D. Freddie Mac's Post–Argument Representations

At oral argument, counsel for both parties essentially conceded that they could not distinguish our recent decision in *Verzilli*, nor could they identify reasons supporting the district court's Rule 54(b) certification. Presumably, seeing the writing on the wall, counsel for Freddie Mac requested in open court, after oral argument had ended, that we not issue any order concerning our jurisdiction for three days so that he could consult with his clients. We granted his request.

On the third day after we had heard oral argument, counsel for Freddie Mac sent the Court a letter in which it dismissed Counts Two and Three *with prejudice*. This letter stated, in relevant part, "[W]e write on behalf of ... [Freddie Mac] to advise this court that my clients are dismissing Counts II and III of the Complaint *'with prejudice'* in order to remove the jurisdictional impediments raised by the panel during the oral argument." Letter from Hanson to Court of 12/13/2002, at 1 (emphasis in original). An order to this effect was entered by the district court on December 23, 2002.

In light of the district court's "after-the-fact" order dismissing Counts Two and Three with prejudice, we acknowledged that the previously non-final Consent Judgment now constitutes a final, appealable order. *See, e.g., Erie County*, 220 F.3d at 201–02 (holding that, notwithstanding the plaintiff-appellants' dismissal before the district court *without prejudice* of one of the federal claims involved in the case, court would exercise appellate jurisdiction where plaintiffs-appellants represented on appeal "that they withdraw finally and with prejudice" the relevant claim).[9]

### III.

On appeal, Scottsdale argues that the district court erred in granting summary judgment to Freddie Mac on Count One, and instead should have granted summary judgment to Scottsdale. Scottsdale also claims that the district court erred in granting attorney's fees and pre-judgment

---

**8.** At oral argument, counsel apprised us that no such motion was made before the district court.

**9.** Given Freddie Mac's ultimate decision, it is fair to assume that Freddie Mac desired our appellate review sooner rather than later, and was willing to surrender its right to reinstate

Counts Two and Three to secure our review. We feel constrained to remind counsel that both their time and the Court's time, as well as judicial resources, would have been conserved by earlier recognition of a "flawed" final order and meaningful consultations between Freddie Mac and its counsel.

interest to Freddie Mac. Freddie Mac, in its cross-appeal, which we consider in Part IV, challenges the date on which the district court held that prejudgment interest should attach.

We consider each of Scottsdale's arguments in turn.

### A. Summary Judgment Motions

We have plenary review of a district court's grant or denial of summary judgment. *See, e.g., Carter v. McGrady,* 292 F.3d 152, 157 (3d Cir.2002). Accordingly, we apply those standards that the district court should have applied below. *Chisolm v. McManimon,* 275 F.3d 315, 321 (3d Cir.2001). Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Our function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

▮▮ The parties agree that New Jersey law applies to this case, as do we. As in diversity cases, "we are not free to impose our own view of what state law should be; we are to apply state law as interpreted by the state's highest court.... In the absence of guidance from that court we are to refer to decisions of the state's intermediate appellate courts for assistance in determining how the highest court would rule." *McKenna v. Pacific Rail Service,* 32 F.3d 820, 825 (3d Cir.1994) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)) (other citations omitted).

The district court concluded (1) that Freddie Mac came within the coverage of the "additional insured" endorsement of T & R's policy with Scottsdale; (2) that Scottsdale owed Freddie Mac a duty to defend Freddie Mac on the underlying claims brought by those parties alleging injuries due to the fire; consequently, Scottsdale had a duty to pay the defense costs Freddie Mac incurred; and (3) that Scottsdale's delay in disclaiming coverage for Freddie Mac estopped Scottsdale from denying that it had a duty to indemnify Freddie Mac for the settlement expenses Freddie Mac had paid to dispose of the underlying claims.

As we discuss below, we agree with all of the district court's conclusions.

### 1. Coverage as an "Additional Insured" under the Scottsdale Policy

▮▮ An endorsement, or rider, to T & R's policy with Scottsdale listed Freddie Mac and Sibley as additional insureds. The text of the endorsement states:

> WHO IS AN INSURED (Section II) [of the policy] is amended to include as an insured the person or organization shown in the Schedule [listing Freddie Mac and Sibley as well as other organizations], but only with respect to liability arising out of 'your work' for that insured by or for you.

Scottsdale argues that the qualification of the endorsement that limits coverage for additional insureds to "liability arising out of 'your work'" places Freddie Mac outside the scope of coverage. Essentially, Scottsdale argues that the district court should have conducted a fact-intensive inquiry, and that such an inquiry would have revealed that T & R could not have been held liable for the injuries to the residents who made the underlying claims against Freddie Mac. Because T & R could not have been held liable, Scottsdale says, the

"additional insured" provision was not triggered.

We find that this argument is unavailing, and that the district court properly concluded that Freddie Mac was covered as an additional insured under the endorsement to the Scottsdale policy.

New Jersey courts have given a broad and liberal interpretation to common insurance policy language pertaining to coverage for additional insured parties for injuries "arising out of" work performed by the main policyholder. In *County of Hudson v. Selective Ins. Co.*, 332 N.J.Super. 107, 752 A.2d 849 (2000), the New Jersey Superior Court, Appellate Division analyzed language equivalent to that contained in the Scottsdale policy, and held that the additional insured was covered under the circumstances. In that case, a general contractor held a commercial general liability insurance policy on which Hudson County, which had hired the general contractor, was an additional insured. The language in an endorsement to that policy stated: "WHO IS AN INSURED (SECTION II) is amended to include as an insured the person or organization shown in the Schedule [Hudson County, its agents, representatives & employees] but only with respect to liability arising out of 'your work' for that insured by or for you." *Id.* at 851.

■ The Appellate Division reversed a lower court's grant of summary judgment for the insurance company and remanded with directions to enter summary judgment for Hudson County. *Id.* at 854. The court explained that though there were multiple reasonable interpretations of the policy language, New Jersey courts apply principles of liberal construction in examining insurance policy language:

[A]lthough insurance policies are contractual in nature, they are not ordinary agreements; they are contracts of adhesion and, as such, are subject to special rules of interpretation.... Consequently, *we are directed to take a broad and liberal view so that the policy is construed in favor of the insured....* ... [P]urchasers of insurance are entitled to the broad measure of protection necessary to fulfill their reasonable expectations.... And *their policies should be construed liberally in their favor to the end that coverage is afforded to the full extent that any fair interpretation will allow....*

*Id.* at 852 (emphasis added) (citations and internal quotation marks omitted).

In light of this framework, the court concluded that the language of the endorsement extended to cover an injury to an employee of a subcontractor who visited the site where the general contractor's work was taking place. The court held that the subcontractor's employee's "presence at the worksite, and the ensuing accident, was sufficiently connected to [the general contractor's] 'work' for the County to constitute a 'substantial nexus' between the contract and the contractor's 'work' requiring [the insurer] to cover the loss." *Id.*[10] See also, e.g., *Franklin Mut. Ins. Co. v. Security Indem. Ins. Co.*, 275 N.J.Super. 335, 646 A.2d 443, 446 (1994) (upholding grant of summary judgment for insurer of office building owner for defense and indemnity costs where office building owner was "additional insured" under insurance policy of restaurant in office building; and holding that a slip and fall accident on the steps of the restaurant was an event for which there was "a substantial nexus between the occurrence and the use of the leased premises"); *Harrah's Atlantic City, Inc. v. Harleysville Ins. Co.*, 288 N.J.Su-

**10.** The definition of "your work" in the policy at issue in *County of Hudson* is identical to the definition contained in the policy in the instant case.

per. 152, 671 A.2d 1122, 1125 (1996) (reversing trial court's judgment and holding that where store's insurance policy listed landlord, Harrah's Casino, as "additional insured," landlord came within the policy's coverage where injured parties were hit by automobile driven by Harrah's parking valet, since the injured individuals had "parked in Harrah's garage primarily to shop at [the store]," and "[w]hen they completed their shopping, they went directly toward the garage to retrieve the car and were injured in that process. Thus, Harrah's liability arose out of the risk generated by [the store's] business on the premises.").

Here, where the resident's underlying complaints alleged problems with the fire and smoke alarm systems, the work performed by T & R was squarely at issue in the complaints, and so Freddie Mac fell within the coverage of the Scottsdale policy.

Scottsdale argues that New Jersey case law mandates "a fact-sensitive approach . . . to determine whether there is coverage." Scottsdale Br. at 26. In this case, Scottsdale asserts, "The underwriting is on the basis of liability for the work of T & R, not on FHLMC's [ (Freddie Mac's) ] exposure for claims when a fire occurs on its premises. *Surely not every fire at FHLMC would fall within the T `& R policy." Id.* at 33 (emphasis in original).

New Jersey case law suggests, however, that claims against Freddie Mac for any fire at the apartment complex that alleged problems with the fire and smoke alarm systems or emergency lighting or exit signs would indeed trigger the policy; such claims would "arise out of" T & R's "work." Indeed, in *County of Hudson*, the New Jersey Superior Court, Appellate Division, interpreted the equivalent policy language to cover a situation where the general contractor's relationship to the event was far more attenuated. The con-

nection here between T & R's work on the fire and smoke alarm systems and the claims related to the February 1996 fire at the apartment building is without question closer than the nexus found to trigger coverage in *County of Hudson*.

### 2. Scottsdale's Duty to Reimburse Freddie Mac for Defense Costs

The district court properly concluded that Scottsdale had a duty to defend, and thus to pay the defense costs incurred by Freddie Mac. In *Voorhees v. Preferred Mut. Ins. Co.,* 128 N.J. 165, 607 A.2d 1255 (1992), the New Jersey Supreme Court set out a simple test for determining when the duty to defend arises:

> "[T]he duty to defend comes into being when the complaint states a claim constituting a risk insured against." . . . Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit. . . . If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage.

*Id.* at 1259 (citation omitted). The court further explained "[t]hat the claims are poorly developed and almost sure to fail is irrelevant to the insurance company's initial duty to defend. . . . 'Liability of the insured . . . is not the criterion; it is the allegation . . . of a cause of action which, if sustained, will impose a liability covered by the policy.' " *Id.* (citation omitted).

We have concluded that district court properly applied the clear test enunciated in *Voorhees*. The underlying complaints all contained allegations that would, if sustained, impose liability for activities within the coverage of the policy.

Scottsdale's arguments to the contrary are without merit. In part, Scottsdale

claims that certain of the underlying complaints did not allege any negligent behavior by T & R; and in any event, T & R did not commit a negligent act or omission that led to the injuries alleged in the underlying complaints (or at least, did not do so until Freddie Mac filed its third-party complaint against T & R). But these arguments miss the point of *Voorhees*: allegations, *even if meritless*, trigger the insurer's duty to defend if they constitute claims relating to a risk against which the policy insures.

In this case, the risk insured against was any damage resulting from problems with the fire and smoke alarm systems provided by T & R and T & R's services related to those systems. The underlying complaints involved claims relating to this risk.

Thus, the district court did not err in holding that Scottsdale owed a duty to reimburse Freddie Mac for the costs of defense.

### 3. Estoppel of Scottsdale from Denying Duty to Indemnify Freddie Mac for Settlement· Expenses

The district court also held that Scottsdale had a duty to indemnify Freddie Mac for the settlement amounts paid to the residents who had brought claims against Freddie Mac. The district court determined that Scottsdale was estopped from asserting that. it did not have a duty to

indemnify Freddie Mac for settlement expenses:

> I find that [Freddie Mac was] prejudiced by Scottsdale's wrongful refusal to defend. And I conclude that it is irrelevant whether the insurer would have been liable under the policy because of the very clearly articulated case law. *Because of its actions, Scottsdale is equitably estopped from denying coverage and liable to indemnify plaintiffs for the settlements that have been entered.*

*District Court Bench Op.* at 71–72, App. 81–82 (emphasis added).

■ We conclude that the district court did not err in holding that Scottsdale was equitably estopped from denying an obligation to indemnify Freddie Mac for the costs of settling the underlying claims.[11]

■ In *Griggs v. Bertram,* 88 N.J. 347, 443 A.2d 163 (1982), the New Jersey Supreme Court explained that "[u]nreasonable delay in disclaiming coverage, or in giving notice of the possibility of such a disclaimer, even before assuming actual control of a case or a defense of an action, can estop an insurer from later repudiating responsibility under the insurance policy." *Id.* at 168. The *Griggs* court stated that "an insurer is entitled to a reasonable period of time in which to investigate whether the particular incident involves a risk covered by the terms of the policy." *Id.* (citations omitted). This right, howev-

---

11. We could have disposed of this issue by Scottsdale's waiver of this argument on appeal. Scottsdale did not raise an objection to the district court's application of estoppel in its initial brief; indeed, Scottsdale made no mention of estoppel until its reply brief. *See, e.g., F.D.I.C. v. Deglau,* 207 F.3d 153, 169 (3d Cir.2000) (because appellants "did not raise this issue in their opening brief on appeal[, t]hey have therefore waived it, and we will not address it"). In any event, we are satisfied, as we indicate in the text, that the district court did ‘not err.

We would also note that Freddie Mac has argued that Scottsdale has waived several of the other arguments it makes on appeal because Scottsdale allegedly failed to raise these arguments before the district court. We have no need to address Freddie Mac's contentions about Scottsdale's waivers because, as the text demonstrates, we have concluded that Scottsdale's arguments (waived or not) are without merit.

er, is accompanied by a corresponding duty, "once an insurer ... *has learned of grounds for questioning coverage ... promptly to inform its insured of its intention to disclaim coverage or of the possibility that coverage will be denied or questioned.*" *Id.* (emphasis added) (citations omitted). The New Jersey court reasoned that "disclosure is especially important where the results of an investigation reveal a conflict between the interests of the insured and its insurer," *id.* at 170 (citations omitted), and that "[f]ailure to give prompt notice of such a conflict, or potential conflict, is inconsistent with the overriding fiduciary duty of an insurer to deal with an insured fairly and candidly so that the insured can, if necessary, protect itself." *Id.* (citation omitted).

Based on these principles, the *Griggs* court ultimately held that

> where, after timely notice, adequate opportunity to investigate a claim, and the knowledge of a basis for denying or questioning insurance coverage, the insurance carrier fails for an unreasonable time to inform the insured of a potential disclaimer, it is estopped from later denying coverage under the insurance policy in the event a legal action is subsequently brought against its insured.

*Id.* at 171.

As the district court held, *Griggs* is directly applicable to the case at hand. The delay involved in Scottsdale's announcing to Freddie Mac its intent to disclaim coverage was at least approximately as long as the eighteen-month delay that the New Jersey Supreme Court found sufficiently prejudicial in *Griggs* to invoke equitable estoppel.[12]

The district court determined that just under eighteen months elapsed from the date of Freddie Mac's demand to Scottsdale for coverage, October 29, 1998, to the date when Scottsdale disclaimed coverage in its answer of April 24, 2000, filed in response to Freddie Mac's complaint. Indeed, the district court indicated that T & R, which had the same counsel as Scottsdale, was aware that it should provide discovery to Freddie Mac on the availability of additional insured coverage as early as November 1997, when Freddie Mac filed its third-party complaint against T & R.[13] The district court noted that Freddie Mac made a number of discovery requests of T & R regarding insurance coverage in March and June 1998. It was not until August 1998 that T & R responded to interrogatories by stating that T & R was insured by Scottsdale at the time of the fire, and it was not until October 1998 that T & R, under an order from the magistrate judge, provided a copy of the Scottsdale policy to Freddie Mac.

Furthermore, the district court observed:

> Scottsdale was well aware of the underlying matter because it defended T & R

---

**12.** In *Griggs*, the court observed:

> In this case a period of 18 months elapsed between the notice of the incident and possible claim and the attempted disclaimer by the insurance carrier. Shortly after the initial occurrence the carrier was alerted to sufficient facts to cause it to question or possibly reject coverage under the policy. Yet it chose to say absolutely nothing to its insured as to the applicability and availability of insurance protection under the policy. Clearly the insurer failed in its duty promptly to notify its insured of the results of its investigation-that the claim was not,

> or might not be, covered by the terms of the policy.

*Griggs*, 443 A.2d at 170.

**13.** Rule 26 of the Federal Rules of Civil Procedure requires the automatic disclosure of "any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(D).

against the claims asserted in third-party complaint[s] brought by the plaintiffs. Unlike plaintiffs, T & R [and] Scottsdale had access to their own policies and where aware of named additional insureds, yet despite repeated requests shirked their obligation to provide discovery, to investigate the matter and provide a timely and reasonable explanation of its disclaimer of coverage. Its failure to respond forced plaintiffs into defending themselves at a given point of time and into this litigation.

*District Court Bench Op.* at 71, App. 81.

Based on the facts identified by the district court, we think it clear that the district court did not err in applying equitable estoppel, per *Griggs*, to Scottsdale. Scottsdale does not dispute any of the district court's determinations regarding its behavior. Nor does Scottsdale cite any cases that militate against the district court's application of *Griggs*.

Scottsdale does argue that there was a twenty-month delay between the filing of the first underlying complaint against Freddie Mac and the filing of the third-party complaint by Freddie Mac against T & R and that Freddie Mac failed to comply with certain discovery obligations, and that in light of these facts, the district court should not have estopped Scottsdale from denying a duty to indemnify for settlement expenses. *See* Scottsdale Reply Br. at 14–16. These assertions, however, do not negate the district court's conclusions. The fact remains that T & R and Scottsdale, represented by the same counsel, delayed informing Freddie Mac of the existence and contents of the Scottsdale policy; and that Scottsdale engaged in inordinate delay before it announced to Freddie Mac that it would disclaim coverage, and the reasons for doing so.

We therefore hold that the district court did not err in granting summary judgment to Freddie Mac on Count One and in ordering Scottsdale to reimburse Freddie Mac for defense costs and to indemnify Freddie Mac for settlement expenses.

### B. Attorney's Fees

■ Scottsdale argues that the district court erred in granting attorney's fees to Freddie Mac. We review the reasonableness of a district court's award of attorney's fees for abuse of discretion. *Goodman v. Pennsylvania Turnpike Comm'n*, 293 F.3d 655, 676 (3d Cir.2002).

■ First, Scottsdale claims that even if there were a duty to defend Freddie Mac, there was not a duty to defend Sibley, because Sibley was not a party to the proceedings before the district court. Because expenditures for attorney's fees were made on behalf of both Freddie Mac and Sibley, Scottsdale argues that it should not have to reimburse legal fees. Scottsdale Br. at 49.

We find this argument unpersuasive. Though it is true that Sibley is not a party in this case, Sibley is listed as an additional insured on the relevant endorsement to the Scottsdale policy. It is clear that Sibley would be on the same footing as Freddie Mac with respect to a potential claim against Scottsdale. Scottsdale does not suggest by what proportion, if any, the legal fees or any other amount of damages should be reduced to account for Sibley's absence from the case. Indeed, it is unclear from the record how counsel fees and the settlement amounts were apportioned between Freddie Mac and Sibley (if they were apportioned at all) who paid all of the fees and whether Freddie Mac paid the settlement amounts itself.[14]

14. Scottsdale also argues that if we uphold the judgment of the district court, we should remand "so that Scottsdale be permitted to examine these bills in order to determine which fees were paid on behalf of Sibley, to

Scottsdale also argues that Freddie Mac, in moving for attorney's fees, failed to follow the requirements of the district court's Local Civil Rule 54.2(b) and New Jersey Court Rule 4:42–9(b). The district court rejected both arguments below, holding that Scottsdale had not cited to any case law requiring compliance with the rules.

■ Even if Freddie Mac did not comply with these rules—and we express no opinion as to whether Freddie Mac has done so—it does not follow that we should reverse the award of attorney's fees. As to Local Civil Rule 54.2, subsection (c) of that rule states:

> In appropriate circumstances, including but not limited to those where counsel fees are sought as sanctions in connection with discovery and other pretrial motions, the Judge or Magistrate Judge to whom the application is directed may order that any one or more of the items enumerated in L.Civ.R. 54.2(a) and (b) will not be required.

D.N.J. L. CIV. R. 54.2(c). The local rule thus authorizes a district court to accept a noncompliant application for fees. Under these circumstances, where Scottsdale has not identified any prejudice that would flow from Freddie Mac's alleged failure to comply with the local rule, we will not conclude that the district court abused its discretion in awarding attorney's fees to Freddie Mac.

As to the New Jersey rule, Scottsdale does not cite any authority requiring absolute compliance with the rule's terms.[15] To the contrary, at least one New Jersey court has explained that "an award of counsel fees may be affirmed even if the affidavit of services is deficient." *Elizabeth Bd. of Educ. v. New Jersey Transit Corp.*, 342 N.J.Super. 262, 776 A.2d 821, 827 (2001). *See also Dotsko v. Dotsko*, 244 N.J.Super. 668, 583 A.2d 395, 402 (1990) (in light of record, counsel's failure to submit certification required under Rule 4:42–9(b) was "harmless" error that did not justify reversal of attorney's fees for a hearing). In the instant case, the district court reviewed all of Scottsdale's challenges to Freddie Mac's claimed fees, and made findings that the objections were without merit. *Federal Home Loan Mortgage Corp.*, Civ. No. 99–05056, slip op. at 11–17. Particularly in light of the district court's careful review of Scottsdale's challenges, we cannot say that Scottsdale has shown any harm caused by Freddie Mac's noncompliance with the New Jersey rule.

Finally, Scottsdale complains about the reasonableness of the fees by making the conclusory assertion that "it is unreasonable and not customary for a law firm to expend over $38,000 in a 9 month time period in fees and costs when very little substance was done." Scottsdale Br. at 54. Scottsdale provides no reason why this is so, beyond reference to its argument before the district court.

We are not persuaded by Scottsdale's arguments that the district court abused its discretion in granting attorney's fees. Scottsdale has failed to make a colorable argument that the district court's award of attorney's fees constituted an abuse of discretion, and we will affirm the district court's grant of attorney's fees.

---

challenge them if necessary, and to make apportionment arguments with respect to Sibley." Scottsdale Br. at 52. We decline to do so. Scottsdale could have and should have raised these arguments before the district court in a proper and timely fashion.

15. Under this rule, counsel fees are allowable "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." N.J. Ct. R. 4:42–9(a)(6).

*C. Prejudgment Interest*

█ Scottsdale claims that even if there was a duty to represent Freddie Mac, the district court should not have granted prejudgment interest because, in Scottsdale's view, "since no demand for a copy of the policy and/or coverage was made before the settlement was reached, no prejudgment interest is owed." *Id.* at 56.

In *Liberty Lincoln–Mercury v. Ford Motor Co.,* 134 F.3d 557 (3d Cir.1998), we held that "[u]nder New Jersey law, a court may award prejudgment interest in its discretion in accordance with equitable principles, and the court's exercise of its discretion should not be disturbed on appeal unless it represents a manifest denial of justice." *Id.* at 574 (citations and internal quotation marks omitted). Scottsdale does not make any argument that there was a manifest denial of justice, and we therefore reject this challenge.

**IV.**

Freddie Mac's cross-appeal, at No. 01–4356, raises only a single issue. In Freddie Mac's view, the district court erred in setting October 25, 1999, as the date from which prejudgment interest would run.

█ As we noted above, we review a district court's award of prejudgment interest to determine whether such award constituted a manifest denial of justice. Freddie Mac has merely argued that because the New Jersey court rule governing prejudgment interest applies by its terms to tort actions only, the district court did not have to consider itself bound to apply the rule's terms literally when it awarded prejudgment interest in its discretion. Instead, Freddie Mac claims that the district court should have concluded that prejudgment interest should run from the dates when Freddie Mac issued settlement payments—in June and August 1998. Freddie Mac. Br. at 59.

Freddie Mac has made no argument, nor given us reason to hold, that the district court's exercise of discretion constituted a manifest denial of justice. We will therefore affirm the district court's judgment against Freddie Mac in its cross-appeal.

**V.**

For the foregoing reasons, we will affirm the judgment of the district court in all respects.