**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3228
_____

DALE W. THORPE; RENEE M. THORPE,
Appellants

v.

UPPER MAKEFIELD TOWNSHIP; UPPER MAKEFIELD TOWNSHIP BOARD OF
SUPERVISORS; THOMAS F. CINO, CHAIRMAN; LARRY S. BREEDEN, VICE
CHAIRMAN; MIKE TIERNEY; DAN RATTIGAN; MARY RYAN; DAVID A.
KUHNS, UPPER MAKEFIELD TOWNSHIP DIRECTOR OF PLANNING &
ZONING; JOHN C. KERNAN, UPPER MAKEFIELD FIRE MARSHALL

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2:14-cv-06154)
District Judge: Honorable Cynthia M. Rufe
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 1, 2018
_____

Before: CHAGARES, JORDAN, and VANASKIE, *Circuit Judges*

(Filed: December 28, 2018)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

VANASKIE, *Circuit Judge.*

Appellants Dale and Renee Thorpe appeal the District Court's September 25, 2017, order granting Appellees' motion for summary judgment and dismissing the Thorpes' Fourteenth Amendment due process and equal protection claims. Their claims arise from numerous land use and zoning disputes with Upper Makefield Township ("the Township"). The gist of the Thorpes' claims is that they have been discriminated against on the basis of Dale Thorpe's Native American race. For the reasons that follow, we will affirm the District Court's order.

I.

In 2007, the Thorpes purchased Thorpe Farm from Dale's cousins. Seven years earlier, Dale's cousins had entered into two conservation easement agreements with the Township, Bucks County, and the Commonwealth of Pennsylvania. Those agreements restrict the farm to agricultural uses and other specified uses in effect in 2000. At all relevant times, Thorpe Farm was zoned CM-Conservation Management and subject to the Joint Municipal Zoning Ordinance ("JMZO"), which governs zoning in the Township and two neighboring municipalities.[1] After purchasing the farm, the Thorpes told the Township's Director of Planning and Zoning, Appellee David Kuhns,[2] that they intended to expand the uses on the property.

_____

[1] Wrightstown Township and Newtown Township are the other municipalities that are party to the JMZO, which has been in effect since 1983.

[2] As the Township's Director of Planning and Zoning, Kuhns is responsible for enforcing the Township's zoning ordinances, including the JMZO.

The Thorpes assert that this conversation with Kuhns led to a Township-wide campaign to "prevent [them] from obtaining the highest and best economic use of [Thorpe Farm]." (Appellants' Br. 4). The Thorpes identified twenty-three zoning "enforcement actions" between 2007 and 2014, which they claim were initiated solely to harass and intimidate them. (*Id.* at 6). As the District Court noted, "[t]hese range from denials of permits to the issuance of enforcement notices and citations, to what [the Thorpes] describe as threats of legal action." (App. 4).

Some disputes arose from hazardous electrical wiring in the Thorpe Farm Store, the installation of neon signs, soil stockpiling, and other non-permitted uses of the farm by contractors. Other zoning disputes stem from the Thorpes' attempts to conduct new activities on the farm: a deer processing business, tractor trailer storage, a timber harvest, commercial storage, a metal fabrication business, and a planned Halloween attraction in 2011. In all of these instances, the Township either ordered the Thorpes to cease the non-permitted activity or refused to issue them a zoning permit to begin the activity. In particular, Kuhns denied a permit application to hold a haunted house inside a barn on the farm because it was within 150 feet of a public road and would have required a zoning variance under a 2007 Amendment to the JMZO.[3]

The Thorpes never pursued any of the zoning dispute remedial procedures available to them, such as appealing Kuhns' zoning decisions to the Township Zoning

---

[3] The 2007 Amendment provides that "[n]o activity, event or structure used for an agricultural entertainment use shall be located within one hundred fifty (150) feet of a right-of-way line or residential property line . . . ." (App. 5 n.5).

3

Hearing Board. Instead, they filed suit in the United States District Court for the Eastern District of Pennsylvania alleging that they were discriminated against on the basis of race, in violation of their due process and equal protection rights under the Fourteenth Amendment.[4] After discovery, the defendants (at that point, the Township and Kuhns) moved for summary judgment, which the District Court granted.[5] This appeal timely followed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, as Appellants' claims arise under the United States Constitution. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment. *See, e.g.*, *Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

## III.

The Thorpes allege that Appellees violated their rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses. To survive a motion for summary judgment, a plaintiff must present concrete evidence in the record to prove that a genuine dispute of material fact exists. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

---

[4] The Thorpes also brought claims for abuse of process and intentional interference with contractual relations in violation of Pennsylvania common law. Those claims were dismissed and are not at issue in this appeal.

[5] The District Court declined to exercise supplemental jurisdiction over the Thorpes' tortious interference claims and dismissed it without prejudice.

*Catrett*, 477 U.S. 317, 322-23 (1986). Here, the record lacks sufficient evidence for either of the Thorpes' claims to survive summary judgment.

A.

The Thorpes assert two violations of their substantive due process rights: the Township's general zoning enforcement and, more specifically, the Township's adoption of the 150 foot set-back in the 2007 Amendment to the JMZO.[6] To succeed on a substantive due process claim, a plaintiff must prove that he was deprived of a constitutionally protected liberty or property interest by arbitrary government action. *See United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 399 (3d Cir. 2003) (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-47 (1998)). Constitutional arbitrariness is defined as egregious official conduct that "shocks the conscience." *Lewis*, 523 U.S. at 846-47. Using this "shocks the conscience" standard in the zoning context helps to ensure that courts are not "cast in the role of a 'zoning board of appeals.'" *United Artists*, 316 F.3d at 402 (internal citations omitted). We have held that conscience shocking behavior includes the deprivation of a liberty or property interest based on, *inter alia*, self-dealing, government corruption, or racial animus. *See Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285-86 (3d Cir. 2004). However, without more, unfair enforcement of zoning ordinances is not conscience shocking behavior. *Id.*

---

[6] At the District Court, the Thorpes also challenged the Township's enforcement of the set-back provision against them. However, we decline to address this argument as they have not raised that challenge on appeal.

Here, the Thorpes contend that the Township deprived them of the best use of their land. Cases involving zoning permits or the enforcement of zoning ordinances implicate the constitutionally protected property interest in land ownership. *See Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1179 n.12 (3d Cir. 1997). Thus, we must determine whether the allegedly unfair zoning enforcement shocks the conscience such that it rises to the level of a constitutional violation.

The Thorpes assert that the Township's unfair zoning enforcement shocks the conscience because it was motivated by racial animus toward Native Americans. Race-based discriminatory enforcement of zoning ordinances would certainly constitute conscience shocking behavior. *See Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993). The Thorpes assert two pieces of evidence to support their allegation of racial animus. First, they cite Dale Thorpe's own testimony that "somebody complained about the Native American drumming and one neighbor walking one day made a comment to [him] that it just takes one bad Indian." (App. 296). Second, the Thorpes cite an incident in which Kuhns met with their African-American contractor at the Township Building. While it is unclear what transpired at this meeting, the police were called and they completed a police report listing the contractor's race as "black." (App. 11 n.25).

This evidence proffered by the Thorpes is insufficient proof of racial animus. There is no evidence that the complaint about drumming led to any zoning enforcement action by the Township, and a comment by a neighbor cannot rationally be attributed to the Township or to Kuhns. Further, with respect to the police incident, we agree with the District Court's finding that, albeit strange, this incident is not sufficient evidence to

6

support the Thorpes' claim that Kuhns has a general racial bias, and is therefore biased against Native Americans.

Nor have the Thorpes offered evidence of any other allegedly conscience-shocking behavior. To the contrary, the record shows that the Township's zoning enforcement actions amount to nothing more than typical municipal land-use disputes.

The Thorpes also claim that the Township violated their substantive due process rights because the Township had no rational basis to adopt the 2007 Amendment to the JMZO, particularly its set-back provision. We disagree. The Thorpes bear the burden of proving that there was no rational basis for enacting the Amendment. To meet that burden, the Thorpes allege that the Amendment was enacted solely "to affect [them] because [they were] told the [T]ownship had other plans for the property and [the Township was] going to make it too hard for [the Thorpes] to afford to stay there . . . ." (App. 342). However, the record shows that the Amendment was adopted by all three municipalities subject to the JMZO and contained numerous provisions that applied to general commercial agricultural land uses. It was proposed in 2006, before the Thorpes even owned Thorpe Farm. Further, the Thorpes concede that the Township is generally concerned about commercial activity and traffic, particularly relating to Halloween attractions. (App. 15). These are sufficient rational bases for the enactment of the Amendment.

We agree with the District Court that no reasonable jury could conclude that the Township lacked a rational basis to enact the Amendment or that it was enacted to spite the Thorpes. The Thorpes have failed to demonstrate a genuine issue of material fact

7

regarding their due process claims. Accordingly, we hold that the District Court properly granted summary judgment on these claims.

B.

The Thorpes also allege a violation of their equal protection rights. We have previously declared that it is "very unlikely that a claim that fails the substantive due process test will survive under an equal protection approach." *Eichenlaub*, 385 F.3d at 287. We will review the District Court's grant of summary judgment for the Appellees on the Thorpe's equal protection claim under two theories: (1) a selective enforcement theory and (2) a "class of one" theory. *See id.* at 286.

A selective enforcement claim is based on the well-established principle that discriminatory enforcement of a facially neutral law violates the Equal Protection Clause. *Holder*, 987 F.2d at 197 (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886)). To succeed on a selective enforcement claim, a party must prove that he was treated differently than similarly situated individuals and that the selective treatment was based on "'an unjustifiable standard, such as race, or religion, or some other arbitrary factor . . . .'" *Id.* (quoting *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989)). The Thorpes contend that, unlike the owners of similarly situated farms, they were subject to increased zoning scrutiny because Dale Thorpe is Native American. Assuming, *arguendo*, that the Thorpes were in fact treated differently, there is no evidence that race was the impetus for the different treatment. That is, nothing in the record suggests any nexus between Dale Thorpe's Native American race and the

8

Township's zoning enforcement actions.  Thus, the Thorpe's equal protection claim must fail under a selective enforcement theory.

Under a "class of one" equal protection claim, a party must prove that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (holding that a class of one could challenge different treatment under the Equal Protection Clause where treatment was alleged to be "irrational and wholly arbitrary")).  The Thorpes contend that they are similarly situated to the owners of several other CM-zoned farms—Ely Farm, Tierney Farm, Gunser Farm, and Slack Farm—who received more favorable zoning enforcement decisions, for no rational reason.  However, the record shows that, just like the Thorpes, these other farm owners had various zoning disputes with the Township.  In contrast to the Thorpes, the owners of the other farms took advantage of the remedial procedures afforded to them, such as appealing adverse decisions to the Township Zoning Hearing Board or seeking zoning variances.[7]  The Thorpes, however, failed to avail themselves of these remedial procedures.

---

[7] The following are examples of zoning issues between the Township and owners of the other CM-zoned farms, as noted by the District Court, *see* App. 6-7:

1. The Elys appealed Kuhns' denial of a zoning permit for a farm store.  They obtained a variance, which allowed them to operate the store provided that they comply with certain conditions, such as installing a fire suppression system and planting trees and bushes to hide propane tanks and solar panels.

2.  Kuhns denied Michael Tierney's zoning application to build a pole barn because it violated a set-back ordinance.  He also denied Tierney's application to build a layer

9

Although the record shows that the Thorpes may have had more zoning disputes than the other farm owners, the increased frequency of zoning enforcement actions alone is not enough to demonstrate that the Township treated the Thorpes less favorably than the similarly situated farm owners. Moreover, the fact that the owners of the other CM-zoned farms applied for zoning permits, appealed permit denials, and sought zoning variances proves that they, too, were subjected to similar zoning enforcement as were the Thorpes. The difference is that, unlike the Thorpes, these farm owners appealed adverse zoning decisions and sometimes prevailed in obtaining permits for new land uses. Thus, we agree with the District Court that any ultimate difference in zoning treatment was supported by legitimate, rational reasons, including differences in the activities conducted on the farms, requests for zoning variances, and the outcome of zoning appeals.

In sum, the Thorpes have failed to show a genuine issue of material fact regarding their equal protection claim. Accordingly, we agree with the District Court's award of summary judgment on this claim.

---

house for his chickens. Tierney successfully appealed these decisions to the Township Zoning Hearing Board and was forced to get a mercantile license for his farm store.

3. Kuhns denied the Gunsers' application for a hayride, corn maze, and live Halloween entertainment. The Gunsers appealed to the Township Zoning Hearing Board, which granted a variance for the Halloween event, with no amplified entertainment. They also appealed to the Court of Common Pleas of Bucks County, which allowed them to have live, amplified entertainment. The Township inspects the Halloween attraction every year and once refused to authorize a haunted house attraction until a fire suppression system was installed.

4. The Slacks applied for a permit from Kuhns prior to displaying a directional sign to advertise their Milk House Farm Market.

## IV.

For the foregoing reasons, we will affirm the District Court's order.