**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2889-17T2

THOMAS FLYNN,

     Plaintiff-Appellant,

v.

TOWNSHIP OF MONTCLAIR
and TOWNSHIP MANAGER
MARC DASHIELD,

     Defendants-Respondents,

and

WILHELM YOUNG, MICHAEL
DeGRAZIO, and DAVID O'DOWD,

     Defendants.

_____

Submitted October 22, 2019 – Decided February 18, 2020

Before Judges Hoffman, Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7210-14.

Law Offices of Gina Mendola Longarzo, LLC, attorneys for appellant (Gina Mendola Longarzo, on the brief).

Apruzzese Mc Dermott Mastro & Murphy, attorneys for respondent Township of Montclair (Ryan Sean Carey, of counsel and on the brief).

Hanrahan Pack, LLC, attorneys for respondent Marc Dashield (Thomas B. Hanrahan, of counsel; Kathy Ann Kennedy, on the brief).

PER CURIAM

Plaintiff Thomas Flynn, a police officer in the Township of Montclair Police Department (Township or Department), asserted claims of reverse discrimination under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to 49, and violations of the Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2, alleging the Department did not properly promote him. He appeals from several orders, including the grant of summary judgment to defendants.[1] After a review of the contentions in light of the record and applicable principles of law, we affirm.

---

[1] Defendant Marc Dashield was the Township Manager from 2010 until 2014, when he left for another position. He was the appointing authority for purposes of police promotions and appointments. We refer to the Township and Dashield collectively as defendants.

2

A-2889-17T2

I.

We derive the facts from the summary judgment record, viewing them in the light most favorable to plaintiff as the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

A.

In 1997, plaintiff became employed by the Township. After rising through the ranks, he was promoted to sergeant in March 2005. Plaintiff did not express any concerns with the promotion process.

The composition of the Department was defined under Chapter 51 of the Township's ordinances. Montclair Twp., N.J., Code § 51. Prior to December 2014, the ordinance stated that the Department was comprised of "one Chief, not more than two Deputy Chiefs," and "such Captains, Lieutenants, Sergeants, patrolmen, probationary patrolmen and other personnel as the [Township] Manager from time to time may determine are essential to be appointed under this chapter in order to meet the police needs of the Township." § 51-6.

Section 51-24 governed the Department's promotion procedures, stating promotions "may be made as vacancies occur," and except for promotions to chief and deputy chief, they "shall be made in accordance with the result of examinations . . . ." Although promotional examinations for all ranks were

conducted in 2006, plaintiff was not eligible to take the lieutenant exam due to his recent promotion to sergeant.

In 2013, the Township and the union for the Department's sergeants, lieutenants, and captains entered into a contract that included a requirement for competitive examinations for promotions for those ranks. Candidates could also see their scores and ratings as well as the information of the officers who were promoted.

In April 2013, defendant Wilhelm Young, an African-American sergeant in the Department, filed a notice of claim against the Township, alleging the failure to promote him to lieutenant violated the LAD. He asserted he would have been eligible for the 2013 captain promotional exam if he had been previously promoted to lieutenant when there was an opening. He also noted no minority officer had been promoted to captain in twenty years. At the time, the 2006 promotional list was in effect, Young was the first ranked officer on that list.

Later that month, promotion examinations for all ranks were administered, and the results were compiled to form the June 2013 promotion list. Before the

4

April 2013 examinations were completed, the Township promoted an officer to sergeant, another officer to lieutenant and a third to captain from the 2006 list.[2]

The four highest-scoring lieutenants on the 2013 test were defendant David O'Dowd, Richard Post, plaintiff, and William Kagan. In February 2014, O'Dowd was promoted to lieutenant and defendant Michael DeGrazio was promoted to sergeant.[3]

Young filed his complaint against the Township in April 2014, seeking a promotion to lieutenant and an award of damages. In June 2014, the Township adopted an affirmative action plan that included the Department's employment decisions. Thereafter, Young and the Township executed a settlement agreement that retroactively provided for Young's promotion to lieutenant as of May 6, 2013. Young executed the agreement on August 6, 2014; the Township did so on August 14, 2014.

On August 13, 2014, plaintiff's counsel wrote to Dashield, asserting plaintiff was wrongfully denied a promotion to lieutenant (the protest letter). He complained that the April 2013 promotions were improperly made from the 2006

---

[2] The officer promoted to captain is African-American.

[3] Plaintiff did not oppose the summary judgment motion filed by DeGrazio. He stipulated to the dismissal of the complaint against Young and O'Dowd.

list. In addition, those promotions were invalid because the Township did not have a proper enabling ordinance. Counsel stated Section 51-6 was illegal because it failed to specify the authorized number of officers at each rank.[4] As a result, counsel contended Dashield should promote plaintiff from the 2013 list.

On August 26, 2014, after learning of Young's promotion, plaintiff's counsel wrote a second letter – protesting the promotion for the same reasons. The letter reiterated that plaintiff intended to file a lawsuit.

In October 2014, plaintiff filed a complaint in lieu of prerogative writs against the Township and Dashield. The complaint contained three causes of action. Count one, for governmental "Misfeasance, Malfeasance, [and] Nonfeasance," claimed that Young's promotion was invalid due to the

---

[4] Counsel referred to <u>Reuter v. Borough Council of the Borough of Fort Lee</u>, 167 N.J. 38 (2001), which held that N.J.S.A. 40A:14-118 required an ordinance establishing the organization of a police department must specify the exact number of authorized police officer positions in a police department, authorized police ranks and the number of authorized positions within each rank. <u>Id.</u> at 43. The Court stated that "from today forward no appointment may be made to any police department position not created in accordance with N.J.S.A. 40A:14-118." <u>Ibid.</u>

The Township had previously been advised of its noncompliance with the statute by the New Jersey State Association of Chiefs of Police in November 2013. Citing to <u>Reuter</u>, the Association stated that "all municipal police ordinances must specify an authorized number of officers at each rank."

A-2889-17T2

ordinance's illegality. Count two asserted that Young's promotion was in violation of the CRA because it was in retaliation for plaintiff's exercise of free speech in protesting all of the promotions.

In count three, plaintiff contended the promotion of Young over him was reverse racial discrimination in violation of the LAD.[5] Plaintiff claimed he was qualified for a promotion to lieutenant, and Young was improperly promoted based on his race and without a comparison of his qualifications with other candidates. Plaintiff did not contest Young's merit or fitness for the rank.

The complaint did not allege that the Township or Dashield violated plaintiff's rights under the LAD by creating a hostile work environment. Furthermore, it did not assert that plaintiff's protests concerning the ordinance or the procedural irregularity of Young's promotion had alluded to race.[6]

In December 2014, the Township enacted a general revision of its Chapter 51 ordinances. The amendment to Section 51-6 stated that the Department

> shall be composed of one Chief, and not more than two Deputy Chiefs, five (5) Captains, eleven (11) Lieutenants, fourteen (14) Sergeants, 120 patrol officers, and such probationary patrol officers and other personnel as the [Township] Manager from time to time

---

[5]  Plaintiff is Caucasian.

[6]  The amended complaint filed in March 2015 essentially repeated the original counts and causes of action.

may determine are essential to be appointed under this chapter in order to meet the police needs of the Township.

In December 2015, Post was promoted to lieutenant and plaintiff was promoted to acting lieutenant. On February 1, 2016, plaintiff and Kagan were promoted to full lieutenant.

### B.

During discovery, plaintiff requested numerous records, many of which were the subject of motion practice. The requested documents included personnel and disciplinary records of Dashield, Young, and O'Dowd and for all officers promoted to lieutenant since 2010 and of Township or Department employees who were involved with these promotions, who supervised and disciplined plaintiff, and who advocated for the Department to adopt the Township's affirmative action plan (request fourteen); qualifications of lieutenant promotion candidates since 2010 (request fifteen); personnel, disciplinary, and investigative records of potential witnesses for the Township or Department (request sixteen); records relating to complaints against or investigations of the Township or Department relating to employment in the last ten years (request thirty-one); records relating to lawsuits or settlements of any complaint or investigative charges against the Township or Department relating

to employment in the last ten years (request thirty-four); and internal records relating to complaints against or investigations of the Township, Department, or officers promoted to lieutenant in the last ten years (request thirty-five). Plaintiff's interrogatory number four sought the same information as document request number thirty-one.

In an initial oral decision and subsequent written opinion, the trial court granted the Township's application for a protective order for the above-listed documents. In addressing requests fourteen, fifteen and sixteen, the court noted the delicate balance between the public policies of protecting the confidentiality of personnel and disciplinary records and protecting employees from workplace discrimination.

However, the court found plaintiff was not contesting the other officers' promotions because they were unfit to perform the duties of a lieutenant. Nor did he contend he was more qualified than the officers who were promoted. Instead, he alleged the promotions were made under an illegal ordinance. Therefore, plaintiff had not demonstrated how the personnel and disciplinary records sought in document requests fourteen, fifteen and sixteen could be relevant to his claims. The court further concluded that plaintiff had not shown a need for the personnel and disciplinary records of other officers.

9

The court also granted a protective order for document requests thirty-one, thirty-four and thirty-five, finding them to be a "fishing expedition." The court rejected plaintiff's declared need for the documents – to demonstrate that other employment-related complaints put the Township and Department on notice that complaints like his were general problems. It concluded that plaintiff had not demonstrated that discovery of material from other litigation matters would lead to the discovery of admissible evidence in this case. Plaintiff's motions for reconsideration of the protective order and to compel a response to interrogatory number four were denied.

C.

In April 2017, defendants moved to dismiss the complaint for plaintiff's failure to provide discovery. During plaintiff's deposition, he stated he had not supplemented his answers to interrogatories or production of documents despite numerous letters from his counsel supplementing both pleadings. When questioned whether the supplemental responses were "true, accurate and complete," plaintiff responded "this is the first time I've seen it so no." The colloquy between defendants' counsel and plaintiff regarding the supplemental responses consumed approximately forty-five minutes of the deposition. Defendants contended it was necessary to re-depose plaintiff because of his

A-2889-17T2

unresponsiveness and unwillingness to attest to the authenticity of the documents.[7]

The court agreed plaintiff had been "uncooperative" during his deposition, describing plaintiff's conduct as if he "was not there to . . . disclose information," and that "he did everything he possibly [could] to resist telling anybody anything." The court concluded it was "satisfied that [plaintiff] was being obstreperous" in more ways than just disclaiming knowledge of some of his discovery responses. Finding a dismissal to be too onerous, the court ordered a sanction of counsel fees.

At the court's direction, Township's counsel produced a certification for the time spent at the deposition on matters that would have to be revisited due to plaintiff's behavior. Counsel stated he spent fifteen hours preparing for the deposition by reviewing multiple rounds of interrogatories and document requests and then reconciling them with plaintiff's pleadings and prior deposition testimony, and seven hours at the deposition. The court awarded the Township $4110 in counsel fees.

---

[7] After the filing of the motion, plaintiff included in his opposition a "Certification of Completeness" regarding the supplemented discovery.

D.

Plaintiff also moved for the court's recusal. Citing to several remarks made during the three years of contentious proceedings, plaintiff argued that the court had already rendered an opinion on the issues in the case. The court concluded that plaintiff had not met the standard under Rule 1:12-1 to compel its recusal. The court explained the comments made regarding plaintiff's behavior during the deposition concerned its ruling on the fee application award and were necessary to explain the decision to make the award. The court reiterated it had no opinion on the merits of the case. It further noted the counsel fee award was a lesser sanction than the dismissal of the case originally sought by the Township.

E.

In June 2017, the court denied plaintiff's motions for reconsideration of the attorney fee award and for recusal. In denying reconsideration of the fee award, the court found plaintiff had not presented any new information. Describing the sanction of counsel fees as "modest," the court reasoned that plaintiff's inability to testify at his deposition about "the truth, accuracy, and completeness [of] something as simple as his responses to interrogatories or requests for documents" justified the Township's concern that it could not

evaluate the truth, accuracy, and completeness of plaintiff's testimony about "other crucial aspects of the case." The court noted counsel's certification detailed the services performed and requested a reasonable hourly rate.

F.

In July 2017, the court quashed plaintiff's subpoenas to non-parties for documentation regarding the racial composition of the police department and minority hiring efforts, and lieutenant candidate scores on the 2013 promotional exam. The court also denied his request to compel a response to his supplemental notice to produce documents.

In addressing the first motion, the court stated the information requested in the subpoenas was barred under the protective orders and that plaintiff was attempting to get the same documents from another source. As to the supplemental notice to produce, it was served after the deadlines for paper discovery and depositions had passed. The court also found plaintiff was long aware of the existence of the information he now sought in the supplemental discovery request.

G.

In February 2018, the court granted summary judgment to the Township and Dashield, dismissing plaintiff's complaint in a comprehensive written

13

opinion. In addressing the first count of the complaint, the court found the action in lieu of prerogative writs was untimely as it was filed beyond the forty-five-day period prescribed under the governing Rule 4:69-6(a). The prerogative writ action challenging the February 2014 promotions was not filed until October 2014. Despite its finding of untimeliness, the court proceeded to address the additional counts of the complaint.

In its consideration of the LAD claim, the court concluded plaintiff had not demonstrated a prima facie case of reverse discrimination. Plaintiff alleged that the Township and the Department hired and promoted public employees with an undue regard to race. He supported his allegations with comments from Dashield, the mayor, and a councilperson about the Township's affirmative action plan and the lack of diversity in the Department's upper ranks. The court stated that these comments did not demonstrate that defendants had discriminated against the majority. Although plaintiff claimed that defendants had an aggressive affirmative action policy, he did not provide any specificity as to the relationship between the policy and his non-promotion.

In addition, the court found plaintiff had no expectation of promotion when Young was promoted effective May 2013 because he was not one of the three highest-ranking officers on the then-existing 2006 promotion list.

14

Furthermore, the promotion of two white officers, DeGrazio and O'Dowd, along with Young, supported the Township's argument that it did not have a bias against the majority. Moreover, Young was promoted under a settlement agreement of a lawsuit. The court concluded that plaintiff had not met his burden to show a prima facie case of reverse discrimination under the LAD.

In turning to plaintiff's alleged violations of the CRA, the court noted plaintiff stated he was not asserting a violation of a substantive due process right. The complaint alleged a violation of the CRA because Young's promotion was in retaliation for plaintiff's exercise of free speech in protesting all the promotions.

Plaintiff supported his allegation with the protest letter sent by his counsel on August 13, 2014. However, the court noted the Township's decision to promote Young could not have been retaliation for the protest letter because Young executed the settlement agreement on August 6, 2014 – seven days prior to counsel sending the protest letter. In addition, the protest letter did not address a matter of public concern because it only referred to plaintiff's contention that he was "passed over for a promotion."

Finally, the court concluded the allegations of generalized subsequent workplace harassment were not actionable as retaliation for the protest letter. It

A-2889-17T2

stated that plaintiff had failed "to allege specific instances of retaliation," just unsupported assertions of "a general harassment, heightened scrutiny, and a denial of overtime."

Plaintiff appeals from all the adverse rulings issued by the trial court, including the grant of a protective order and the counsel fee award, the denial of the recusal motion, the quashing of his subpoenas and the entry of summary judgment.

## II.

## A.

We begin our review in addressing plaintiff's challenge to the denial of his discovery requests. Under Rule 4:10-2(a), "parties may obtain discovery regarding any non-privileged matter that is relevant to the subject of a pending action or is reasonably calculated to lead to the discovery of admissible evidence." In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 82 (2000).

A trial court's decisions as to discovery orders and protective orders are reviewable only for an abuse of discretion or a misapplication of the law. Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017). A party seeking a protective order under Rule 4:10-3 must show "good cause," which requires "specific examples or articulated reasoning" why the

confidentiality of the particular discovery sought outweighs the need for it in the particular case. Id. at 80 (citation omitted).

In the context of police personnel and disciplinary records, we recognize the important public interest in maintaining their confidentiality. Bayer v. Twp. of Union, 414 N.J. Super. 238, 273 (App. Div. 2010). Prior to the disclosure of such records, a plaintiff must establish "some factual predicate making it reasonably likely that information in the file could affect the officer's credibility" and "that the file may reveal prior bad acts that bear 'peculiar relevance' to the issues at trial." Ibid. (quoting State v. Harris, 316 N.J. Super. 384, 387, 398 (App. Div. 1998)). Moreover, the personnel records are protected from disclosure under N.J.A.C. 13:1E-3.2(a)(4).

Plaintiff argues the court erred in denying reconsideration of the protective order issued for six of his document requests, and by denying his motion to compel a response to one of his interrogatories. Plaintiff contends the court disregarded his claims that the Township's promotional process failed to measure the merit and fitness of the candidates.

We find no abuse of discretion in the court's discovery rulings. The requested documents would not have supported the three counts in the complaint. Plaintiff only alleged that the ordinance failed to provide specificity

as to the number of officers by rank required under the <u>Reuter</u> case; that Young's promotion was retaliation for the protest letter; that Young's promotion was procedurally invalid; and that Young's promotion was improperly based on race.

The six document requests at issue would not have led to relevant evidence of those matters. The legality of the ordinance, and the promotions made under the prior ordinance, were questions of law. The Township agreed to promote Young as part of the settlement of his lawsuit. The execution of the agreement preceded the protest letter and could not have been retaliation for it. In addition, the officer promoted in 2013 was the first-ranked on the 2006 list.

The two other officers promoted before plaintiff to lieutenant were ranked ahead of him on the respective lists and were Caucasian. Therefore, the requested records would not have supported his reverse discrimination claim.

Because of the unique circumstances of Young's noncompetitive promotion, any comparison of his qualifications with those of other officers was irrelevant. Therefore, plaintiff was not entitled to Young's personnel and disciplinary records, or those of the other officers described in document requests fourteen, fifteen, and sixteen.

We also discern no error in the court's determination that the documents sought under requests thirty-one, thirty-four, and thirty-five and interrogatory

number four were overly broad in scope and not designed to lead to the discovery of admissible evidence in this case. Plaintiff did not assert a pattern of conduct by the Township or Department of violations of the LAD or CRA to overcome the confidentiality afforded police personnel and disciplinary records. See Nostrame v. Santiago, 213 N.J. 109, 128 (2013) (when the complaint fails to plead facts that would establish cause of action, discovery to obtain such facts is "a mere fishing expedition").

B.

We next turn to plaintiff's claim that the trial court erred in denying reconsideration of the attorney's fee award to the Township. We review the order for an abuse of discretion. Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (citing Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

A trial judge is authorized to award reasonable attorney's fees after considering the five factors under RPC 1.5. Elizabeth Bd. of Educ. v. N.J. Transit Corp., 342 N.J. Super. 262, 272 (App. Div. 2001). In granting the counsel fee application, the court reviewed the deposition transcript and the Township counsel's certification supporting the fee request. Relying on its own reading of the deposition transcript, the court found plaintiff was uncooperative and obstreperous in a way that rendered his testimony on most matters doubtful.

19

It concluded that counsel had sufficiently supported his extensive deposition preparation, the hourly rate was reasonable, and the fees were properly incurred. We discern no abuse of discretion in denying reconsideration of the fee award.

C.

We next consider plaintiff's challenge to the denial of his motion for recusal. Plaintiff claims the judge unjustifiably described him as obstreperous, uncooperative, and not forthright, which created an appearance of disfavor that impeded confidence in the fairness of the proceedings.

"Any party, on motion made to the judge before trial or argument and stating the reasons therefor, may seek that judge's disqualification." R. 1:12-2. "[I]t is not necessary to prove actual prejudice on the part of the court" because "the mere appearance of bias may require disqualification." State v. Marshall, 148 N.J. 89, 279 (1997) (citing R. 1:12-1(f)). "However, before the court may be disqualified on the ground of an appearance of bias, the belief that the proceedings were unfair must be objectively reasonable." Ibid. The grant or denial of the motion is within the judge's discretion. State v. Medina, 349 N.J. Super. 108, 130 (App. Div. 2002).

The comments to which plaintiff objects were made by the judge during his ruling on the Township's application for attorney's fees. The judge explained

A-2889-17T2

his comments were limited to plaintiff's conduct during his deposition and were necessary to explain the decision granting counsel fees. The judge also noted the award was a lesser sanction than the dismissal of the case sought by the Township.

As our Supreme Court has recognized, "adverse ruling[s] in prior proceedings" or a party's dissatisfaction or displeasure do not warrant disqualification of a judge. See Marshall, 148 N.J. at 95; R. 1:12-1. We are satisfied plaintiff's motion for recusal was properly denied.

D.

Plaintiff next asserts that the court erred (1) in denying his subpoenas for non-party discovery; and (2) in denying his request to compel a response to his supplemental notice to produce additional documents in June 2017. Plaintiff contends the court applied the wrong standard – "extraordinary" cause – instead of the "good cause" standard under Rule 4:24-1 when it declined to extend discovery to allow for an additional production of documents.

Plaintiff served a subpoena duces tecum on Lieutenant Tyrone Williams, Jr., in his capacity as president of "Sentinels-16," an association for Montclair's minority police officers. It sought "all documents pertaining to minority hiring efforts at the Montclair Police Department from 2012 to the present pertaining

to Wilhelm Young in any manner . . . ."  It also sought all documents relating to the "ethnic/racial breakdown of the Department . . . ."  In addition, plaintiff served a subpoena duces tecum on E.B. Jacobs & Associates, located in Pennsylvania, for "materials," including "candidate scoring," in connection with the Department's 2013 "lieutenant promotional process . . . ."

Following the argument on defendants' motion to quash the subpoenas, the court ruled that the subpoenas sought the same information barred under the previously issued protective orders.  It was not an abuse of discretion to quash the subpoenas.

We also do not discern an abuse of discretion in the court's denial of plaintiff's motion to compel a supplemental production of documents.  The court had issued six case management orders.  The July 8, 2016 case management order set the final deadline for written discovery – July 28, 2016.  The three subsequent case management orders only addressed deadline dates for depositions of parties, witnesses and experts.  The court noted the deadline for paper discovery had passed.  In addition, plaintiff had failed to provide any reason why the information he now sought could not have been requested earlier.

Although we note the court misstated the applicable standard as "extraordinary" cause, its comment that plaintiff should have made the request

"long before" reflected a finding that even "good" cause had not been demonstrated to allow further document production. See R. 4:24-1(c) (motions to compel discovery must be made returnable prior to the expiration of the discovery period unless "good cause" is shown). The judge did not abuse his discretion in denying plaintiff's untimely request for additional documents.

III.

We turn to the grant of summary judgment to defendants. In count one of his complaint, plaintiff argued the Township improperly promoted Young to lieutenant from an expired promotional list. In addition, plaintiff contended Young and other officers were promoted without a proper enabling ordinance, in violation of Reuter. The court dismissed count one, finding plaintiff's claim regarding the invalidity of Section 51-6 was untimely.

We review the grant of summary judgment de novo, applying the same standard as the motion judge. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). Providing all favorable inferences to the non-moving party, Rule 4:46-2(c), we must "determine whether a rational factfinder could resolve [an] alleged disputed issue in favor of the non-moving party . . . ." Perez v. Professionally Green, LLC, 215 N.J. 388,

23

405-06 (2013) (citations omitted). A party opposing summary judgment, however, must "do more than 'point[] to <u>any</u> fact in dispute' in order to defeat summary judgment." <u>Globe Motor Co. v. Igdalev</u>, 225 N.J. 469, 479 (2016) (alterations and emphasis in original) (quoting <u>Brill</u>, 142 N.J. at 529).

A.

Although we agree count one was properly dismissed on summary judgment, we reach our conclusion for different reasons than expressed by the trial court. <u>See</u> <u>Hayes v. Delamotte</u>, 231 N.J. 373, 387 (2018) ("A trial court judgment that reaches the proper conclusion must be affirmed even if it is based on the wrong reasoning.") (citations omitted). Because the effective date of Young's promotion was exactly forty-five days before the filing of plaintiff's complaint, the ordinance-based claim in the complaint seeking to vacate Young's promotion was not untimely. <u>See</u> <u>Rule</u> 4:69-6(a) ("No action . . . shall be commenced later than [forty-five] days after the accrual of the right to the review, hearing or relief claimed . . . .").

However, the non-conformance of the Township's ordinance with <u>Reuter</u> did not require the nullification of Young's (or any other officer's) promotion. The amended ordinance enacted in December 2014 ratified the promotions made under the prior ordinance.

At the time of these events, Section 51-6 did not detail the composition of the Department – the ordinance did not specify a certain number of officers, patrolmen or other police personnel. In Reuter, the Supreme Court held that N.J.S.A. 40A:14-118 requires the municipal ordinance, not a resolution under the ordinance, to specifically establish the number of positions in the police force. 167 N.J. at 40-41. Because of the widespread reliance by municipalities that positions could be established by resolution, the Court made its ruling prospective. Id. at 43. However, existing appointments to police positions in any municipality would not be disturbed. Ibid.

It is undisputed that Section 51-6 failed to satisfy Reuter. The question instead is whether promotions made under the deficient section may be validated. We conclude that the promotions at issue here were later validated when the Township amended its ordinance to comply with Reuter.

Ratification requires an intent to ratify based on full knowledge of all material facts, although the intent may be inferred from conduct like the passage of an ordinance. Maltese v. Twp. of N. Brunswick, 353 N.J. Super. 226, 246-47 (App. Div. 2002) (citing Johnson v. Hosp. Serv. Plan of N.J., 25 N.J. 134, 140-41 (1957)). Here, the Legislature expressly authorized the Township to hire officers to staff the Department. The amended ordinance ratified the

25

Department's traditional staffing levels at each rank. Therefore, the promotion of officers without exceeding those levels was not authority that municipalities were forbidden to exercise. The prior ordinance did not provide the specificity required by Reuter, but this defect was corrected under the amended ordinance, which did not require any change in the Township's practices. See 405 Monroe Co. v. City of Asbury Park, 40 N.J. 457, 463 (1963) (holding where there are procedural irregularities in the municipality's exercise of authority granted by the Legislature, municipal action taken pursuant to a deficient ordinance may be later validated through ratification) (citing Johnson, 25 N.J. at 140). We find promotions made under the prior ordinance were subsequently properly ratified when Section 51-6 was amended to conform to Reuter's holding.

Accordingly, on the grounds of ratification rather than untimeliness, we affirm the dismissal of plaintiff's claim that the promotions of other officers to lieutenant prior to enactment of the amended ordinance were invalid for being ultra vires.

B.

We next address plaintiff's argument that the court erred in dismissing his CRA claim. Modeled on 42 U.S.C.A. § 1983, the CRA provides a means of vindicating substantive rights guaranteed by federal law and New Jersey's

Constitution and laws.  Gormley v. Wood-El, 218 N.J. 72, 97-98 (2014).  The elements of a cause of action under the CRA are the same as those under § 1983.  Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 115 (App. Div. 2011).

The CRA recognizes two types of private claims: (1) a claim when one is "deprived of a right," and (2) a claim when one's rights have been "interfered with by threats, intimidation, coercion or force."  Felicioni v. Admin. Office of Courts, 404 N.J. Super. 382, 400 (App. Div. 2008).

Plaintiff contends Young's promotion and the workplace harassment he experienced constituted retaliation for his exercise of free speech in protesting the promotions made under Section 51-6.

A public employee's retaliation claim for engaging in protected activity is evaluated under a three-step process:

> First, plaintiff must establish the activity in question was protected.  For this purpose, the speech must involve a matter of public concern.  Once this threshold is met, plaintiff must demonstrate his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees. . . . [P]laintiff must then show the protected activity was a substantial or motivating factor in the alleged retaliatory action.  Lastly, the public employer can rebut the claim by demonstrating it would have reached

the same decision . . . even in the absence of the protected conduct.

[Lapolla v. Cty. of Union, 449 N.J. Super. 288, 307 (App. Div. 2017) (alterations and emphasis in original) (quoting Baldassare v. New Jersey, 250 F.3d 188, 194-95 (3d Cir. 2001)).]

Speech is a matter of public concern if it can "be fairly considered as relating to any matter of political, social, or other concern to the community . . . ." Connick v. Myers, 461 U.S. 138, 146 (1983). "[T]he key to the 'public concern' inquiry is 'whether expression of the kind at issue is of value to the process of self-governance,'" and "whether it is important to the process of self-governance that communications on this topic, in this form and in this context, take place." Montone v. City of Jersey City, 709 F.3d 181, 193 (3d Cir. 2013) (quoting Azzaro v. Cty. of Allegheny, 110 F.3d 968, 977 (3d Cir. 1997)).

Plaintiff claims the protest letter and subsequent internal workplace harassment complaints satisfy the requirement that he engaged in protected conduct because he was speaking as a private individual on a matter of public concern regarding the procedural irregularity of Young's promotion and alleged workplace harassment against plaintiff. We disagree.

Clearly, the Township's decision to promote Young could not have been retaliation for plaintiff's protest letter because the decision predated the letter.

We consider then plaintiff's allegation that he experienced workplace harassment in retaliation for speaking out against Young's promotion. As stated, plaintiff's claim is only actionable under the CRA if he was addressing a matter of public concern.

The public concern requirement is not satisfied where a lawsuit ultimately seeks to advance interests personal to the plaintiff and only incidentally makes accusations of a nature that might suggest a public concern. See Borough of Duryea v. Guarnieri, 564 U.S. 379, 386 (2011); Lapolla, 449 N.J. Super. at 308-09.

We are satisfied plaintiff's retaliation claim under the CRA was properly dismissed. The protest letter and subsequent internal harassment complaints did not raise issues of public concern, they were only incidental to plaintiff's private grievance over a promotion to which he believed he was entitled. In addition, plaintiff failed to show that an individual acting under color of state law retaliated against him. See Strategic Envtl. Partners, LLC v. Bucco, 184 F. Supp. 3d 108, 122 (D.N.J. 2016). The complaint only identified Dashield as acting under color of law, but plaintiff conceded that Dashield never retaliated against him. Therefore, plaintiff's CRA action could not proceed. Because this action essentially concerns an employment dispute rather than a matter of public

concern, plaintiff cannot satisfy the first prong of <u>Baldassare</u> and the court correctly determined plaintiff failed to establish a claim under the CRA.

C.

Finally, we consider plaintiff's claim that the court erred in dismissing his LAD reverse discrimination claim.  To establish a discriminatory failure to promote claim, plaintiff must show: (1) he was a member of a class that the LAD protects; (2) he was objectively qualified for the desired position or rank; (3) he was denied the position or rank; and (4) the employer gave the position to persons with similar or lower qualifications.  <u>Dixon v. Rutgers</u>, 110 N.J. 432, 443 (1988).

In a reverse discrimination action, the first element is modified.  There, a plaintiff who is not a member of a protected class "must substantiate . . . that the 'background circumstances support the suspicion that the defendant is the unusual employer who discriminates against the majority.'"  <u>Erickson v. Marsh & McLennan Co.</u>, 117 N.J. 539, 551 (1990) (alteration in original) (citation omitted).  General comments by government officials in support of affirmative action do not establish the first modified <u>Erickson</u> prong.  <u>See</u> <u>Wachstein v. Slocum</u>, 265 N.J. Super. 6, 17-18 (App. Div. 1993).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate reason for the employment decision. Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 274 (App. Div. 1996). If the defendant does so, the burden shifts back, and the plaintiff must then prove the employer's proffered explanation is merely a pretext for discrimination or that discrimination "more likely than not motivated defendant's action." Ibid.

Plaintiff claims the court erred by finding he failed to demonstrate a prima facie case and to establish that the Township was the "unusual employer" that discriminates against the majority.

We disagree. The Township's nondiscriminatory reason for promoting Young was the settlement of his lawsuit with a non-competitive promotion sanctioned under its affirmative action plan. Plaintiff did not rebut this proffer and did not offer any evidence that the lawsuit was groundless, that the settlement was not in line with the affirmative action plan, that the plan itself was unsound, or any other basis for inferring that the Township did not resolve the litigation in good faith. Plaintiff merely relied on general comments by various officials in support of affirmative action without explaining how these comments were connected to his failure to be promoted. Under Wachstein, the

31

comments are not sufficient to demonstrate the Township was discriminating against the majority.

Furthermore, plaintiff had no expectation of promotion at the time of Young's advancement. Because Young's promotion was retroactive to May 2013, he was promoted from the 2006 list. The 2013 list was not effective until June 2013. Because plaintiff was not on the 2006 list, he was not eligible to have his qualifications compared to Young's.

In addition, plaintiff's harassment allegations described a hostile work environment LAD cause of action, which is a separate claim from a failure to promote allegation. See Davis v. Husain, 220 N.J. 270, 274 (2014). But plaintiff did not plead a hostile work environment claim under the LAD. We are satisfied the court correctly dismissed plaintiff's LAD reverse discrimination claim.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2889-17T2